## CHARLES B. SAMPSON, Respondent, *v.* T. W. SHAEFFER, Appellant.

Indebitatus assumpsit for rent, will not lie in favor of a stranger for the purpose of trying his title; or by one of two litigant parties claiming the land: this action depending, not upon the validity of plaintiff's title, but upon a contract express or implied.

The allegation, that the use and occupation of the lot in question was at the request of defendant, and by the permission of plaintiff, was the allegation of a contract; and this, plaintiff is bound to establish, to enable him to succeed.

In an action for use and occupation, the court was asked to instruct the jury "that it was necessary, to enable the plaintiff to recover, that he should show, that the defendant used and occupied the premises by the permission of the plaintiff; and if the jury believed defendant used and occupied the same against the will of the plaintiff, that they must find a verdict for the defendant;" which the court refused. Held, that in this the court erred.

No action for use and occupation will lie, where possession is adverse and tortious, for such possession excludes the idea of a contract, which in all cases of this action, must be either express or implied.

Where the defendant held as tenant under J. S. in his lifetime, under whom, as his heir-at-law, the plaintiff claimed as landlord, but the defendant refused to recognize him as such; held, that this refusal terminated the tenancy, and overweighed the presumption of a contract between him (defendant), and the plaintiff.

Under the Practice Act, while the mere forms of proceedings are simplified, all that is substantial in the body of the law is preserved, to give it certainty, and logical conclusiveness as a science.

APPEAL from the Fourth Judicial District, Yuba County.

This action was brought to recover the sum of $1400, alleged to be due from defendant to plaintiff, for the use and occupation of a certain lot of land in the City of Marysville, Yuba County (Lot No. 2, block No. 1, range E.), and particularly described, "at defendant's request, and by the permission of the plaintiff, from the 1st March, 1851, to the 1st May, 1852."

The answer of the defendant denies all indebtedness to the plaintiff for the use and occupation of the said lot, and denies that he used and occupied the said lot from the 1st March, 1851, to the 1st May, 1852, by the permission of the plaintiff,

as alleged; and denies that the said lot now is, or ever has been, the property of the plaintiff.

The cause was tried by the court, a jury having been waived by the parties. The facts found by the court, so far as they appear to be material to the understanding of the case, as considered by the Supreme Court, are as follows:—

That in the latter part of the year 1848, Jose M. Ramerez and John Sampson, purchased of Charles Covellaud, one of the original ranch holders, the tract of land on which is situate the present City of Marysville, for the price of $24,000, and went into possession immediately after the purchase. That Ramerez and Sampson divided the property thus purchased, and each took charge of his own. That the City of Marysville was first laid out into streets, &c., in the latter part of 1849, and beginning of 1850. That when the lots were divided, lot No. 2, block 1, range E., fell to John Sampson, who went into possession, and leased the same as his property, in the beginning of 1850. That John Sampson died in September, 1850, and his estate descended to his brothers, William and Charles B. Sampson, his heirs-at-law, who divided the same before the commencement of this suit, and the lot in question, in the partition, fell to the plaintiff, Charles B. Sampson. That on the 14th March, 1850, one Spalding leased the said lot from John Sampson, together with other lots, who sub-let the same to one Loveland, and the latter to the defendant, Shaeffer. That both Spalding and Loveland paid rent to John Sampson, in his lifetime. That the defendant, Shaeffer, went into possession of the lot under Loveland, and whilst he was a tenant of John Sampson, deceased, about the 1st March, 1852, and retained the same in his occupancy until about the 1st May, 1852, and, indeed, up to the present time. That Shaeffer paid rent for the premises for a short time after he went into possession, and afterwards refused to pay any longer, and denied the title of the plaintiff, or his right or authority to control him. That when defendant paid rent to Loveland, he paid it under protest, denying at the same time that he was his landlord.

In the month of May, 1851, the plaintiff brought an action for a forcible and unlawful detainer against defendant, to recover the possession, in a Justice's Court, which was afterwards appealed to

the County Court, and there tried *de novo* in September, 1851; in both of these courts there were verdicts and judgments for the defendant.

That on the trial of the present action in the District Court, the defendant introduced the record of the above suits as tried in the Justice's Court, and afterwards on appeal in the County Court, and relied on the same as a bar or estoppel to the present suit, which the counsel for plaintiff objected to, but was admitted by the court. The defendant was also permitted to prove, by parol evidence, that the question of tenancy was in issue in the above trials, and was litigated between the parties, to which plaintiff objected.

Plaintiff also proved the property worth $200 per month.

The court went on to say, " That the answer of defendant in this case, was the equivalent of the plea of the general issue, or *nil debet*, and that under this plea, the evidence of the former suit, and parol testimony that the same point was in issue between the parties, was admitted, as it tended to show a former recovery, and that it was upon this that the defendant chiefly relied to defeat this action, to which exception was taken as above, on the ground that a former recovery, relied upon as a defence, should be pleaded. The court, however, admitted the testimony with hesitation, and doubt whether, by the statute of 1851, defendant was not bound to have pleaded the "former recovery" to entitle him to give the record in evidence, but held, that to constitute a bar, such recovery must consist " of the same matter, and be between the same parties," and "can be final only for its own proper purposes and object with reference to the subject-matter of the suit." That the object of plaintiff in the statutory suit, was to recover possession and damages for the unlawful holding over; in this suit it is entirely different, and is to recover for the value of the use and occupation; and if the question of tenancy did arise in the former suit, it did not appear that it was the only question at issue, and the case might have turned on other points and questions. For anything that appears, the defendant may have pleaded payment, an unexpired lease, &c. But neither is an action of a lower grade a bar to one of a higher grade; that of forcible entry, would be no bar

to ejectment; so the statutory action arose *ex delicto,* this *ex contractu.*

In this view of the case, the court gave judgment for plaintiff for $1400 and costs, from which defendant appealed.

*Fields,* for appellant.

To sanction the action for use and occupation, the plaintiff must show a *permissive* occupation by defendant, under John Sampson, in contradistinction to a *tortious* one; that is, he must establish a *tenancy.* Whatever goes to show that defendant did not occupy as a tenant, goes to defeat the action; the record in the case of forcible entry and detainer was conclusive of this, and was therefore admissible in evidence. It also shows that the occupancy of defendant was not by the *permission* of the plaintiff. In that action plaintiff elected to treat defendant as a trespasser. He is bound by his election, and cannot now treat him as being lawfully in possession, which the action for use and occupation presupposes. 13 Johns. 490; 6 Johns. 48; 11 Pick. 1; 3 Harr. 214; 10 Gill. & Johns. 49; Taylor's Landlord and Tenant, 294; 2 Nott & McCord, 156; 3 Ser. & Raw. 500; 11 Maine, 270; 3 Stork, 1511; 14 Mass. 96; 1 Yeats, 578.

Where there is no opportunity of pleading a judgment on the same point between the parties (as in this case), it may be given in evidence, and as evidence it is conclusive. 11 Smith's Leading Cases, 444–5, and particularly the cases, Voight *v.* Winch, Doe *v.* Haddoch, Gardenier *v.* Buckbee, 3 Con. 125, 4 Con. 659; 8 Mead. 1, 22, 24, 35, 43, 44; 2 Hill, 478; 3 Dennis, 338; 4 Comstock, 73; 16 Ser. & Raw. 282, 285; 17 Ib. 273; 2 Yerg. 467; Combe's Notes to Mil. Ev. 4 vol. 30–35; 2 Wash. 64.

And as to what is the rule, as regards the same *point* or *question,* which once litigated and settled by a verdict and judgment, is conclusive. See 4 Con. 73; 3 Con. 125; 26 Maine, 555; 1 Stork. 201; 2 Yeager, 467; Estill *v.* Saul.

By the terms "opportunity to plead," as used in the books, is meant *ability* to plead, from the nature and form of the action, which the court below mistook for the mere time, &c., necessary to prepare the plea.

As to the admissibility of parol evidence, see 8 Wend. 44–5; 2 Hill, 481; 4 Comstock, 73. The witnesses say nothing as to any other question than that of tenancy in the action for forcible detainer, and do say that this question was litigated. It was for the plaintiff to show if any other question was litigated.

The proceeding in forcible detainer by the plaintiff, shows an election to terminate the relation of landlord and tenant, and to treat defendant as a trespasser; in this action he treats him as lawfully in possession. He cannot come into court and blow both hot and cold. Archbold's Landlord & Tenant, 150; Taylor's Landlord and Tenant, 294; 1 Wend. 134–6; 1 Term Rep. 378, 386, 387; 2 Nott & McC. 156; 3 Ser. & Raw. 500; 4 Yerg. 305; 1 Den, 113.

It is absurd to say, because the Practice Act abolishes the distinctions in the forms of actions, that it is therefore immaterial what the substantial allegations are. As much legal precision is necessary under our system, in setting forth the cause of action, as under any other; a contract sued upon must be sued as a contract, a trespass as a trespass, &c.

There is no privity of contract between the plaintiff and defendant, even supposing that he went into possession as tenant of Loveland, the original lessee of Sampson. Taylor's Landlord and Tenant, sec. 636, 448; 3 Comst. 286.

——, for respondent.

Under the issue, the record of a former suit was not admissible in evidence in this action. In ejectment, where special pleading is not allowed, in assumpsit upon a general count, where the plea cannot answer the declaration by reason of its generality, and in trover, where not guilty can only be pleaded, a record cannot be given in evidence, and it is submitted in no other case unless pleaded. 8 Wend. R. 9; 2 Hill, 478; 1 Gr. on Ev. 531.

If the record was evidence, it could only be conclusive as to the facts appearing on it. 2 Phil. Ev. 19. If evidence aliunde was admissible to show what was litigated, why could not rebutting evidence be produced. If so, the record and evidence could not be conclusive.

A mere litigation does not render a record conclusive. It must appear that the same point was *litigated, submitted,* and *decided;* collateral matter, or matter incidentally cognizable, or inferred from argument or construction, constitutes no bar. 1 Gr. Ev. sec. 529; 4 Cow's Rep. 73; 10 Wend. Rep. 80; 3 Wend. R. 27; 8 Wend. R. 3; 3 Cow. 125; 4 Cont. Rep. 73.

The questions litigated in former proceedings and in this action, were not for the same causes of action. The same cause of action is where the same evidence will support both actions in a different form, thus making the evidence given in the first action, the test of its identity in the second. 7 J. R. 20; 2 J. R. 21; 8 J. R. 333; 3 Wills's Rep. 304.

The mere bringing an action and no recovery had, does not conclude plaintiff. The election is determined by a verdict and judgment; and a judgment obtained by plaintiff, in a former suit, and subsequently reversed, does not determine his election. 1 Wend. R. 134; 1 Term. Rep. 378.

WELLS, Justice, delivered the opinion of the court. HEYDEN-FELDT, Justice, concurred.

The action in the court below, was brought to recover $1400, for the alleged use and occupation of certain premises in Marys-ville, by the defendant, *"at his request, and by the permission of the plaintiff,"* from March 1, 1851, to May, 1852. The defendant in his answer denies all indebtedness for the alleged use and occupation by him of the premises, and denied that he used and occupied them *by the permission of the plaintiff.*

The legality of the plaintiff's title is not in issue. The plaintiff could not prevail upon it in this action, if it were valid; neither could the defendant dispose of it, if it were not; and whether it belongs to one or the other could not be tried in an action to recover rent for use and occupation. *"Indebitatus assumpsit* for rent, will not lie in favor of a stranger for the purpose of trying his title, or by one of two litigant parties claiming the land: this action depending not upon the validity of the plaintiff's title, but on a contract, express or implied." So it was

expressly said in Boston v. Brinley, 11 Pickering, 1, and Codman v.        14 Mass. R. 96, and the rule is sustained by cases there cited.    The plaintiff alleges a contract, express or implied, by the averment that the use and occupation of the lot in question, by the defendant, was " at the request of the defendant and by the permission of the plaintiff," and having thus alleged a contract, he can only succeed by establishing one.    The use and occupation of the land claimed by plaintiff creates a presumption of a contract; the defendant may rebut this presumption by proof that the possession was adverse: this case does not depend, therefore, upon the question, whether the claim of the plaintif, as heir of John Sampson, deceased, was sufficiently established, or whether the decree of the probate court was conclusive, or whether there were other heirs, nor will it turn upon the objection raised of a defect of parties: that objection not having been taken by the answer, it must be deemed to have been waived, and could not be raised upon the trial.    Practice Act, Title IV. s. 45.

The correctness of the judgment is involved in the other propositions advanced by the appellant, and the question we now propose to examine is, whether the plaintiff can recover upon mere occupancy without permission of the plaintiff, and against his will ?

The record discloses, that the defendant and one Hall took possession of the lot in controversy in Feb., 1850, and that defendant has been in possession ever since; Hall having sold out his interest to him in May, 1851.    The plaintiff endeavored to show a tenancy existing on the part of the defendant under John Sampson, who, it is said, became proprietor of the land in 1849, and who died in September, 1850; conflicting testimony was introduced upon this point, but whether the weight of it went to sustain this position or not, it is no part of our present purpose to say, as that was within the province of the jury, and should have been left to them to decide; the fact however, was controverted by the defendant.    The plaintiff claimed to be the rightful heir of the estate of John Sampson, and it appears from the evidence of his own witnesses, that he attempted to oust the defendant from the premises by legal proceedings in May, 1851.    It appeared further, that there had been considerable litigation be-

tween the parties relative to the possession of the land.   At the proper time, during the trial of the cause, the defendant requested to give the jury certain instructions, and among others the follow-ing: "*First*, that it is necessary, to enable the plaintiff to recover for the use and occupation of the premises, that he should show that the defendant used and occupied them by the permission of the plaintiff, and that if the jury believed that the defendant used and occupied the premises against the will of the plaintiff, then they must find a verdict for the defendant."   The court refused so to instruct the jury, and the defendant excepted.   In thus refusing the learned judge erred.

At common law, no action of assumpsit for rent would lie except upon an *express* promise; the right to maintain such action upon an express or *implied* contract was given by the Statute of 2 Geo. II. c. 19, s. 14, which has since been adopted as part of the common law; but this statute, from the terms of it, seems only to apply to the case of a *demise*, and where there exists the relation of landlord and tenant, founded on some agreement creating that relation.   This rule of the common law, and the construction of the statute of Geo. II. have, in modern times, undergone many important modifications, and the general rule, as at present established, and confirmed by an abundance of authority, we conceive to be as we have already intimated, and (as more definitely stated in 2 Nott & M'Cord's South Car. R. Ryan *v.* Made, and in Espinasse's Dig. 57), comes to the conclusion, "That no action for use and occupation will lie when possession has been adverse and tortious, for such excludes the idea of *a contract*, which, in all cases of this action, must be express or implied."

This is undoubtedly the correct, as well as the general rule, and is fully supported by the case of Bevil *v.* Wright, 1 Tenn. Rep.; Durnford *v.* Easts, 378) Smith *v.* Stewart, 6 John. Rep. 46; Wharton *v.* Fitzgerald, 3 Dall.; and innumerable cases cited by these authorities.

The plaintiff does not claim for rent during the lifetime of John Sampson, nor does he rely solely upon the alleged tenancy under him in his lifetime, or the continuance of such tenancy after his death; and if he did, the rule would be none the less applicable,

but the plaintiff seeks to recover for use and occupation merely, and claims the right to do so, even though such use and occupation was without his permission and against his will.   Even had the defendant held as tenant under John Sampson in his lifetime, his refusal to recognize the plaintiff as his landlord terminated the tenancy, and overweighed the presumption of a contract between him and the plaintiff; there was no longer either privity of estate or contract between them, but as was said in the decision of Balls v. Westwood, 2 Comp. 11, cited by Justice PUT-NAM, in Boston v. Brinley, 11 Pick. 8, " He renounced the plaintiff's title, divested himself of the possession obtained under the plaintiff, and commenced a fresh holding under his own alleged title."   " There was nothing in this conduct which can warrant the inference of holding over at sufferance, even if there had been a prior holding as tenant for a certain time."   It was not the mere unexplained holding over of a tenant of which we read in the books.   Coke, Lit. 57.

" All that the law requires is, that during the time when the tenant actually holds by permission of his landlord, the landlord's title shall not be disputed.   But when he ceases to hold in that relation, he may commence upon an adverse title, after the expiration of the lease."

Again, in Featherstonaugh v. Bradshaw, 1 Wend. 134; and in Bancroft v. Wardwell, 13 Johns. R. 134, the doctrine is repeated, that the action can only be maintained when the relation of landlord and tenant exists between the parties; it has been held that it would not lie against a person who came in under the plaintiff's title as a purchaser, 2 Johns. C. 335; Woodfall, 350.

But it is said, " that the statutes of California have abolished the distinctions existing at common law," and that technicalities and mere forms are to be disregarded by our courts; " that substantial rights are regarded, and not the shadows of a case."   It is indeed true that distinctions in mere forms of pleading are abolished, but the common error is to mistake substance for form. It is because substantial rights are regarded, that this court will suffer none to recover upon a mere " shadow of a case," nor permit a plaintiff on one day to attempt to oust a defendant upon

the ground that he is a trespasser, and on the next to recover for rent upon an implied contract, on the ground that he is occupying with his permission; "for that," to use the language of the Court of King's Bench, in Birch *v.* Wright, "would be blowing both hot and cold at the same time, by treating the possession of the defendant as that of a trespasser, and that of a lawful tenant during the same period."

The effect of the point raised by the respondent would be to say, that as all technical forms are abolished, the plaintiff can recover in an action brought upon an alleged contract, whether the defendant be a lawful tenant or a trespasser; and if he is not proven to be one, he must necessarily be the other: such would indeed be the case if he could recover upon mere occupancy; or perhaps the respondent intends to say that the plaintiff may waive tort and maintain assumpsit. But the defendant has then a right to say to the plaintiff, "There has been no tort; you, having nothing to waive, the land is mine, not yours." And whether it belongs to one or the other, we could not try it in an action for rent for use and occupation, as we have already seen from the cases above cited from 11 Pick. J., and 14 Mass. R.

It is a gross error into which many have fallen, to suppose that because the Practice Act abolishes the distinctions in the forms of action, it is immaterial what the substantial allegations of pleadings are, or that all the distinctions which the law makes in the causes of action are swept away. While the mere forms of pleadings are simplified, the body of the law is preserved with all those general principles, those wise distinctions, those strict principles and unerring rules, those sound and logical conclusions, which constitute its justice and justifies its glory as a science.

The plaintiff is not without a remedy. If he has any title to the premises, the defendant is liable to be turned out as a trespasser, and is responsible in that character for the *mesne* profits, or more properly in an action brought under the 64th section of the Practice Act to recover the property, with or without damages, for the withholding thereof, or for waste committed thereon, or for the rents and profits of the same, but not in an action like the present, upon contract, unless he can show that the defendant used and occupied the premises, not adversely and

against his will, but with his permission and as his tenant, and that is a proper question for a jury to pass upon.

We do not deem it necessary to decide the other point raised by the appellant, viz., "that the court erred in refusing to allow the defendant to prove the finding of the jury in the forcible entry action in the County Court," further than to intimate, that it doth not appear from the record, that the defendant had properly prepared the way for the introduction of such proof by parol; nor doth it appear that upon these findings judgment was finally entered.

The judgment of the court below is reversed, and a new trial ordered.