SAMUEL APPLETON vs. FREDERICK L. AMES & another.

Suffolk.   March 20, 1889. — September 6, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Lease — Re-entry — Surrender — Ouster of Sub-lessee.*

A lease of a building provided for the lessor's re-entry if the lessee should fail to
keep any of his covenants, be declared insolvent according to law, or make an
assignment for the benefit of creditors.   The lessee sublet a part of the build-
ing and "failed," and thereupon the lessor put a janitor into it, and arranged
that the lessee should collect the rents, and upon the sub-lessee's inquiring
whether his rights were affected, and whether he should continue to pay rent
to the lessee "as heretofore," told him so to continue to pay it, as the lessee
was acting as his agent for that purpose.   Subsequently the lessee assigned
for the benefit of creditors, and surrendered the lease, whereupon the lessor
notified the sub-lessee of the surrender, and that until further notice the rent
would be due and payable to him.   After the lessee's failure, but before the
assignment, the sub-lessee made one payment of rent, and, after the surrender
and the subsequent notice from the lessor, made another payment to the lessee,
who receipted for both in his own name.   Thereafter the sub-lessee asserted a
right to hold the premises sublet to him without any payment of rent, and the
lessor dispossessed him.   *Held*, that an action by the sub-lessee against the
lessor to recover damages for an ouster could not be maintained.

TORT to recover damages for an ouster of a term of years.
Trial in the Superior Court, without a jury, before *Barker*, J.,
who found for the defendants, and reported the case for the
determination of this court, in substance as follows.

Frederick L. Ames and Helen A. Ames, as the owners of an
estate numbered 48 on Winter Street in Boston, gave a lease
thereof to Forbes Wight, who did business under the name of
Forbes Wight and Company, for the term of five years from Feb-
ruary 1, 1881.   Helen A. Ames died on December 13, 1882, and
the defendant other than the first named held by descent all the
title which she had in the leased premises.   This lease, which
contained no covenant against subletting a portion of the de-
mised premises, provided as follows: "And provided also that
these presents are upon condition, that, if the said lessee or his
representatives or assigns do or shall neglect or fail to perform
and observe any or either of the covenants contained in this in-
strument which on his part are to be performed, or if the said

lessee shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of his property for the benefit of creditors, then and in either of the said cases the lessors or those having their estate in the said premises lawfully may, immediately or at any time thereafter, and whilst such neglect or default continues, and without further notice or demand, enter into and upon the said premises or any part thereof in the name of the whole, and repossess the same as of their former estate, and expel the said lessee and those claiming under him, and remove their effects, (forcibly, if necessary,) without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and that upon entry as aforesaid the said term shall cease and be ended." The report was silent as to the payment of rent by Wight, or of taxes on the leased premises.

On May 25, 1881, Wight made a sublease for one year of a portion of the building, consisting of a room numbered 1 and a suite of rooms numbered 10 therein, at an annual rent of five hundred and ten dollars, with the privilege of extension to February 1, 1886, providing for re-entry by Wight for breach of any covenant, with no covenant against subletting, but with an express covenant by the plaintiff to pay rent to Wight. The plaintiff entered and took possession under this lease, and exercised the privilege of extension to February 1, 1886, by remaining in possession and paying rent under the lease after the end of the year for which the lease was given. The plaintiff continued in personal possession of the premises leased to him until February, 1883, when he underlet them to tenants at will, who thereupon entered into possession. In January, 1884, Wight "failed," and the defendants then put a janitor in the building, and made an arrangement with Wight by which he collected the rents for them. On February 2, 1884, the plaintiff wrote to the first named defendant a letter, in which he said: "Hearing that Mr. Forbes Wight had failed, I write to ask if my lease from him for rooms No. 1 and 10 at 48 Winter St. is in any way affected thereby, and if I shall continue to pay rent to Wight as heretofore." On the same day a reply was sent to the plaintiff, signed on behalf of the first named defendant, which contained the fol-

lowing: " In reply to your favor of this date, I will say that for the present it is all right for you to pay rents to Mr. Wight, who is acting as the agent of Mr. Ames in collecting them. If there is to be any change, I will see that you are notified." On February 14, 1884, the plaintiff paid the instalment of rent due on February 1, 1884, for the preceding January, and received a receipt therefor signed "Forbes Wight & Co." On March 4, 1884, Wight executed what purported to be an assignment of "goods, wares, and merchandise," situated on the leased premises, for the benefit of creditors, which was signed by himself, by his assignee, and by one other person only, who was not described. On March 11, 1884, Wight indorsed on the lease from the Ameses to him a surrender of all of his rights under it, and on the same day the following letter was sent by the first named defendant to the plaintiff: " I beg to notify you that Mr. Forbes Wight no longer holds a lease of the building 48–50 Winter Street, and that from and after this date, and until further notice, the rent due from you will be due and payable to the undersigned."

The plaintiff, in a letter written by him to the first named defendant on March 17, 1884, acknowledged the receipt of his letter of March 11, and inquired, " Do you propose to give me a lease for the principal term of my lease from Wight, viz. two years from February 1, 1884, or in the reading of the lease 'to February 1, 1886.' " To this letter the plaintiff received the following reply, under date of March 20, 1884: " We expect to find a party who will take a lease of the whole building just as Mr. Wight did, under which circumstances you can undoubtedly go on just as you have been in the building, and if we do not find such a party we shall be glad to have you remain as our tenants." On March 24, the plaintiff made another payment of rent, due March 1, for the preceding month of February, and received therefor another receipt, dated March 1, and signed by Wight; both of the receipts received by him being on bill-heads of "Forbes Wight & Co., Importers and Retailers." On May 7, 1884, the plaintiff's tenants of the suite of rooms numbered 10, mentioned in the lease to him, were put out of possession of them by the defendants, and the tenant of room No. 1 attorned to the defendants as his landlords, induced

thereto by their threats to eject him unless he should so attorn, and thereafter paid rent to the defendants, informing the plaintiff of that fact, and refusing to pay further rent to him; and the defendants have since been in possession of the leased premises. Between March 24 and April 19 there was further correspondence, the plaintiff on April 10 first acting by attorney, in which the plaintiff insisted on his rights, and on April 15 denied that he was under any obligation to pay rent to any one, and in which the defendants refused to regard him other than as a tenant at will.

The first named defendant, in his sworn answers to the plaintiff's interrogatories, testified that he was informed by his counsel that after the above assignment by Wight, and after Wight had surrendered all his rights under the lease from the Ameses to Wight, all persons claiming under that lease, or under Wight as lessee thereunder, who were in possession of any portion of the premises, either attorned to the defendants or vacated the premises. The plaintiff testified that he never paid rent to the defendants, or either of them, and that he never acknowledged either of them as his landlord.

It did not appear that there was any breach of the conditions of the lease from the defendants to Wight, or that any tenancy at will was established between the plaintiff and the defendants, or that the defendants gave any notice to quit to Wight or to the plaintiff, or conveyed the premises, or made any other lease thereof than the one to Wight, or took any possession of the premises, or made any entry for breach of condition of the lease to Wight, except so far as may be inferred from the facts and evidence above stated.

If the finding was right, judgment was to be entered for the defendants; otherwise, such judgment was to be entered as law and justice might require.

*A. C. Vinton,* (*G. M. Reed* with him,) for the plaintiff.

1. The instrument given by Wight to Appleton was a sublease, and not a partial assignment of the lease to Wight, since Wight did not thereby part with his whole interest in the premises, nor did it entitle the defendants to recover rent from the plaintiff, either before or after its surrender; there was no privity either of contract or of estate between the defendants

and the plaintiff. *Campbell* v. *Stetson*, 2 Met. 504. *Dunlap* v. *Bullard*, 131 Mass. 161. The surrender of the lease given to Wight terminated all rights of the defendants to enter for breach of condition thereof. Taylor's Land. & Ten. (8th ed.) §§ 292, 502, 518. 4 Kent Com. (13th ed.) 103–105. Shep. Touch. 300. *Great Western Railway* v. *Smith*, 2 Ch. D. 235, 247, 253. *Eten* v. *Luyster*, 60 N. Y. 252. *Shepard* v. *Merrill*, 2 Johns. Ch. 276. If after the surrender of the lease given to Wight the defendants might still enter to avoid that lease for breach of condition, their entry in May, 1884, upon the premises leased to the plaintiff was not sufficient for that purpose. *Clerke* v. *Pywell*, 1 Wms. Saund. 319, note 1. *Ford* v. *Lord Grey*, 6 Mod. 44; *S. C.* 1 Salk. 285. *Chalker* v. *Chalker*, 1 Conn. 79. *Bowen* v. *Bowen*, 18 Conn. 535. 2 Washb. Real Prop. (5th ed.) §§ 452, 453. *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 85. The assignment by Wight was not an assignment of his property for the benefit of creditors, within the meaning of the condition in the lease to Wight. *May* v. *Wannemacher*, 111 Mass. 202. *Pierce* v. *O'Brien*, 129 Mass. 314. *Edwards* v. *Mitchell*, 1 Gray, 239. The right to re-enter, reserved in the lease to the plaintiff, was extinguished with the estate of Wight, by the surrender of the latter to the defendants. The surrender of the lease given by Ames to Wight did not prejudice the estate of the plaintiff under his lease from Wight. Taylor's Land. & Ten. (8th ed.) § 517, and notes. *Beal* v. *Boston Car Spring Co.* 125 Mass. 157. *Mellor* v. *Watkins*, L. R. 9 Q. B. 400, 404, 405. After the surrender of the lease given by the Ameses to Wight, the plaintiff was entitled to hold under his sublease, without payment of rent to any one; for rent being an incident to the reversion, Wight could not collect it, because he had parted with his reversion to the defendants; nor could the defendants collect it, because, although the reversion to which it was incident had been conveyed to them, yet as soon as it was so conveyed it merged in the greater reversion in fee of which they were already possessed. Shep. Touch. 300, 301. Smith's Land. & Ten. (3d ed.) 366, 367. Taylor's Land. & Ten. (8th ed.) §§ 517, 518, and notes. 4 Kent Com. (13th ed.) 104, 105. *Thre'r* v. *Barton*, Moore, 94. *Webb* v. *Russell*, 3 T. R. 393. *Krider* v. *Ramsay*, 79 N. C. 354. The attornment to the

defendants by the tenant of room No. 1, brought about by their threats to eject him unless he should so attorn, was equivalent in legal effect to an eviction, or ouster, of the plaintiff by the defendants. *Whitney* v. *Dinsmore*, 6 Cush. 124, 128, 129. *Estabrook* v. *Smith*, 6 Gray, 572, 577. *Morse* v. *Goddard*, 13 Met. 177, and cases there cited. *Aldridge* v. *Stuyvesant*, 1 Hall, 210. *Yates* v. *Joyce*, 11 Johns. 136. The plaintiff therefore held a term indestructible by the defendants, but without obligation to pay rent to any one.

2. No forfeiture of the plaintiff's rights can be found in this case. There is no evidence of any breach of condition, or other fact, occurring before March 4, upon which such an entry could be founded. The failure of Wight, it is reasonable to suppose, was only to fulfil some commercial obligations maturing at the beginning of the new year. The absence of evidence tending to establish an entry by the defendants for breach of condition shows conclusively that they did not intend such a proceeding. The claim of such an entry on the part of the defendants is clearly " an afterthought, designed to shield them from the consequences of the unlawful ouster " of the plaintiff. *Hodgkins* v. *Price*, 137 Mass. 13, 21. The arrangement made with Wight in January, 1884, was not the adverse act of an entry for breach of condition, but amounted to an inchoate surrender, becoming complete on March 11. The rents to be collected were the rents of Wight from his tenants, not theirs. Even if a breach of condition, or other foundation for a forfeiture, were shown, the acts of the defendants in January, 1884, do not appear to show " an entry or possession with intent to hold the property for forfeiture," or the requisite " manifestation of this intent " necessary to give validity to an entry to vacate a lease. *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 85. There is no claim of any later entry by the defendants, nor is any change in the situation, or any other circumstance or notice, equivalent to an entry shown prior to the written surrender of March 11, 1884. *Stone* v. *Ellis*, 9 Cush. 95, 101. *Erskine* v. *Townsend*, 2 Mass. 493.

3. The plaintiff never became the tenant at will of the defendants. Payment of the plaintiff's rent to Wight was not payment to the defendants, although they call him an " agent."

The plaintiff could not have successfully resisted a suit for rent brought by Wight upon the covenants contained in the sublease. The receipts were given in Wight's own name, and on his bill-heads, and disclose no agency. The reported testimony of the first named defendant, obtained from information furnished him by his counsel, shows that, if the plaintiff ever became the defendants' tenant, it was not until after the surrender of March 11. The plaintiff's testimony is that he never paid them rent nor acknowledged them as landlords, and this evidence is corroborated by the correspondence.

*J. H. Benton, Jr.,* for the defendants.

DEVENS, J. The plaintiff's position, that by the so called surrender of the lease of Wight, on March 11, to the defendants, he continued, as sub-lessee, the tenant of Wight, under no liability to pay rent to any one, and that it was the duty of the judge thus to have found, cannot be sustained.

Upon the facts as reported, it was competent to find that the defendants had taken possession of the leased premises for breach of the condition in the lease to Wight. It was in evidence that Wight had failed in January, 1884, and from this it might well be inferred that he had not merely failed to meet some mercantile obligations, but that he was unable to comply with the covenants in his lease. Upon neglect or failure by Wight to perform any of these covenants, or if he should be declared bankrupt or insolvent, or if any assignment should be made of his property for the benefit of creditors, the lessors were entitled, without further notice or demand, to enter and repossess themselves of the estate, as against the lessee and those claiming under him. On the "failure" (as it is termed in the report) of Wight, the defendants put a janitor into the building, and made arrangements by which Wight was to collect the rents for them. These facts, if they did not constitute a taking possession by them, certainly afforded evidence of it. In answer to the plaintiff's inquiry of the defendants, whether his rights were in any way affected, and if he should continue to pay rent to Wight as heretofore, he was told it would be right to pay rents to Wight, "who is acting as the agent of Mr. Ames in collecting them." The plaintiff on February 14 paid to Wight the rent then due, and on March 24 paid the rent

due on March 1 also to Wight.  On March 4 Wight made an assignment of his property for the benefit of his creditors, and on March 11 indorsed on the lease a surrender of his rights thereunder.  On the same day the plaintiff was notified that Wight held no longer a lease of the premises, and that, until further notice, the rent due from him would be due and payable to the defendants.

While the plaintiff testified that he never paid rent to the defendants, or to either of them, and never acknowledged either as his landlord, yet when, in answer to his own inquiry of them, after the janitor was put in possession by the defendants, as to the person to whom the rent should be paid, he is told to pay it to Wight, acting as the agent of the defendants, and he then pays the rent to Wight, it must be deemed that he pays it to the defendants.  It is to be observed, also, that he did this in regard to the payment in March for the February preceding, after he was fully aware that Wight had no interest in the lease, and therefore no right, except as agent of the defendants, to the rents.

Even if any doubt existed as to whether or not the possession taken by the defendants in January was for any failure to perform the covenants of the lease, the assignment made for the benefit of creditors on March 4 entitled the defendants, by the express terms of the lease, to enter and repossess themselves of the estate, and they were at that time in actual possession of the premises other than those occupied by the plaintiff.  On March 11 Wight surrendered to the defendants, and the plaintiff was notified that Wight no longer held a lease of the building.  The plaintiff acknowledged the receipt of this notice on March 20, and then inquired whether it was the purpose of the defendants to give him a lease for a term similar to that held by him from Wight.  He was told in reply, that the defendants hoped to lease the whole building, in which case he could undoubtedly go on as he had been doing, and that, if no such party was found, the defendants would be glad to have him remain as their tenant.  The plaintiff, who remained in possession of the premises sublet to him, pursued his negotiation for a lease from the defendants by the letter from his attorney of April 10, and it was not until April 15 that he asserted a

right under the lease to Wight to hold the premises sublet to him without any payment of rent whatsoever.

His position is, in substance, that by the surrender by Wight of the lease to him the plaintiff was entitled to hold his sublease without payment to any one; that, rent being an incident to the reversion, Wight could not collect it, because he had parted with his reversion to the defendants; nor could the defendants collect it, because, although the reversion to which it was incident had been conveyed to them, yet as soon as it was so conveyed it merged in the greater reversion in fee of which they were actually possessed. Inequitable as this result would be, there is certainly authority for the proposition, that where a lessee technically surrenders to his landlord, having had authority to grant and having granted a sublease of a portion of the premises, this surrender not only fails to prejudice the sublessee, but releases him, for the reasons stated, from the payment. *Webb* v. *Russell*, 3 T. R. 393.    Taylor's Land. & Ten. (8th ed.) §§ 517, 518.    *Grundin* v. *Carter*, 99 Mass. 15.

We do not think it applies to the case at bar upon the facts as the court was authorized to find them. It was competent for the lessors, upon the occurrence of several contingencies heretofore stated, to enter and repossess themselves of the estate, thus putting an end to all subleases. When, on the failure of Wight, they did thus enter, and when, being thus in, Wight makes an assignment of his property for the benefit of his creditors, which is one of the contingencies upon the occurrence of which the defendants were entitled to enter, and when the plaintiff thereafter pays his rent to Wight as the agent of the defendants, although for the month previous to the assignment, seeking from them in the first instance a lease for the remainder of the term of the sublease made to him by Wight, the strongest evidence is afforded that he assented to the entry of the defendants as one they might lawfully make, with the effect of dispossessing him of the estate granted by his sublease, and that his subsequent tenancy was, at most, one at the will of the defendants. Even if, as the plaintiff contends, there is a paucity of evidence that the entry or subsequent possession was with the intent to hold the property for forfeiture, or any requisite manifestation of such intent, the conduct of the plaintiff

shows how it was understood by him. The defendants could have accepted a surrender of his lease from Wight without prejudice to the lease of a part of the premises, and, if such lease was assigned to them, could have maintained an action against a sub-lessee for the rent thereafter accruing. *Beal* v. *Boston Car Spring Co.* 125 Mass. 157. It is reasonable to suppose that they would have done so if they had not fully understood, as they had a right to understand from the conduct of the plaintiff, that he acquiesced in their possession of the premises, of a part of which he had a sublease, and that he treated their lease to Wight and Wight's sublease to him as lawfully terminated, and his own possession thereafter as that of their tenant at will. The plaintiff cannot therefore recover, as he claims to do, for the rentable value of the portion of the premises (of which he was dispossessed) for the unexpired term of the sublease, either with or without deduction on account of the rent reserved in that lease.

Nor are we of opinion that he can recover damages for the three months, at the end of which time only a notice to quit, had it been regularly given, would have expired, or for fourteen days, at the end of which time a notice for non-payment of rent might have been made to expire, even if it be held that he had become a tenant at will of the defendants. *Ashley* v. *Warner*, 11 Gray, 43. After the payment made by him on March 24 for the month of February, the plaintiff not only ceased to pay rent, but in the month of April wholly denied his liability so to do, and asserted title against the defendants under the sublease of Wight to him. Through his tenants, who were either compelled to attorn to the defendants or were removed, he was dispossessed of the premises sublet to him on May 7. No notice to quit for non-payment of rent was served upon him so far as appears, and if he had become a tenant at will of the defendants, none under the circumstances was necessary. While the estate of a tenant at will can only be directly terminated in the manner provided by statute, as by a notice to quit at the end of fourteen days for non-payment of rent, or by the three months' notice in writing, and when the rent reserved is payable at periods of less than three months by a notice equal to the interval between the days of payment, there

are many acts which a lessor or lessee may do which indirectly will, or may at the election of the other party, operate to determine the lease. Thus, by a conveyance, or by a written lease to a third party by the lessor, the estate of the lessee is terminated. *Howard* v. *Merriam*, 5 Cush. 563, 583. *Curtis* v. *Galvin*, 1 Allen, 215. *Hildreth* v. *Conant*, 10 Met. 298. *Mizner* v. *Munroe*, 10 Gray, 290. Upon the commission of waste by the lessee at will, the lessor may enter and determine the estate. *Daniels* v. *Pond*, 21 Pick. 367. An assignment of his estate by the lessee at will may be treated by the lessor as terminating it. *Cooper* v. *Adams*, 6 Cush. 87. *King* v. *Lawson*, 98 Mass. 309.

Where the tenant denies the title of his landlord, or does definite acts inconsistent with it, as by accepting a deed from some one other than the landlord, and asserting title under it, the tenancy at will may be terminated by the landlord without any notice to quit. He may bring his action against the tenant as a disseisor, or trespasser, as if he had originally entered by wrong; or he may, if he can do so without violence, repossess himself of the premises. *Russell* v. *Fabyan*, 34 N. H. 218, 223. *Sampson* v. *Shaeffer*, 3 Cal. 196, 205. *Chamberlain* v. *Donahue*, 45 Vt. 50, 55. *Isaacs* v. *Grearheart*, 12 B. Mon. (Ky.) 231. *Sharpe* v. *Kelley*, 5 Denio, 431. *Fusselman* v. *Worthington*, 14 Ill. 135.

No notice to quit is ever necessary unless the relation of landlord and tenant exists, and a disclaimer of tenancy dispenses with such notice. If one in as a tenant repudiates this relation, and denies that he holds under his landlord, the landlord may, at his own election, treat the tenancy as terminated. *Tuttle* v. *Reynolds*, 1 Vt. 80. *Harrison* v. *Middleton*, 11 Grat. 527. *Duke* v. *Harper*, 6 Yerger, 280. *Boston* v. *Binney*, 11 Pick. 1, 8.

The relation of tenant at will having been established on the part of the plaintiff toward the defendants, it is clear that it was wholly renounced by the plaintiff and a title adverse to the defendants asserted, when he finally insisted on his right to hold under the sublease from Wight.

Upon the facts reported and the inferences which could properly be drawn, the presiding judge was, in our opinion, justified in finding for the defendants.

*Judgment for the defendants.*