POLSON v. PARSONS.

No. 2148, Okla. T.    Opinion Filed May 12, 1909.

(104 Pac. 336.)

1.    **FORCIBLE ENTRY AND DETAINER—Jurisdiction—"Tenement."** A house, built upon land to which the owner has no title, but in which he claims and enjoys the right of peaceable possession, occupied by a tenant, is a "tenement" as that word is used in section 159, art. 13, c. 67 (paragraph 5086) Wilson's Rev. & Ann. St. Okla. 1903.

2.    **FORCIBLE ENTRY AND DETAINER—Notice to Quit—Waiver.** In an action of forcible detainer brought to recover possession of

a tenement, the preliminary notice to terminate the tenancy is waived, where the relation of landlord and tenant is denied by the defendant.

Turner and Williams, JJ., dissenting.

(Syllabus by the Court.)

*Error from District Court, Pawnee County; Bayard T. Hainer, Judge.*

Forcible detainer by G. W. Parsons against T. M. Polson. Judgment for plaintiff, and defendant brought error to the Supreme Court of Oklahoma Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma. Affirmed.

*Biddison, Campbell & Eagleton,* for plaintiff in error.—On question of jurisdiction: 13 A. & E. Enc. Law (2d Ed.) 768; *Kassing v. Keohane,* 4 Ill. App. 460; *Field v. Higgins,* 35 Me. 339; *De Laine v. Alderman* (S. C.) 9 S. E. 950; *Gibson v. Brockway,* 8 N. H. 471; *Garst v. Love* (Okla.) 55 Pac. 19; *Light v. Conover* (Okla.) 63 Pac. 966; *Williams v. Steinmetz* (Okla.) 82 Pac. 986; *Coey v. Lowe* (Wash.) 77 Pac. 1077.

*Wrightsman, Bush & Johnson,* for defendant in error.—On definition of "tenements": Bouvier's Law Dict.; *Oskaloosa, etc., v. Board* (Iowa) 51 N. W. 18; *Sackett v. Wheaton,* 17 Pick. (Mass.) 103. On plaintiff's possessory rights and validity of lease: 33 St. at Large 1061; *Lamb v. Davenport,* 18 Wall. 307; *McKennon v. Winn,* 1 Okla. 327; *Hagar v. Wickoff,* 2 Okla. 584; *Rector v. Gibbon,* 111 U. S. 276; *Pappe et al. v. Trout,* 3 Okla. 260: On question of waiver of notice: *Cook v. Penrose* (Mo.) 85 S. W. 676; *Tobin v. Young* (Ind.) 24 N. E. 121; *Woodward v. Crown,* 36 U. S. 1; 24 Cyc. 1403; Jones on Landlord and Tenant, sec. 257; Wilson's Rev. & Ann. St. 1903, sec. 3328.

DUNN, J. This is an action of forcible detainer, originally brought in the probate court of Pawnee county, Okla., to recover possession of certain premises, situated in the city of Pawhuska, in the Osage Indian reservation. The defendant in error, G. W. Parsons, was plaintiff in the court below, and prevailed in the probate court. The case was appealed to the district court, and a

trial *de novo* was had, where the plaintiff was again successful. The defendant brought the case to the Supreme Court of the territory for review by proceedings in error, and the same now comes.to us by virtue of our succession to that court.

The petition or complaint of plaintiff alleges that he is the owner, and at the time of the filing of his action was entitled to the immediate possession, of the property described, which consisted of certain storerooms and a shed; that on the 1st day of April, 1904, the plaintiff by a written contract leased the premises to the defendant for a period of three years from the date thereof; that defendant entered into possession of the premises under and by virtue of the said written lease; that he had failed and refused to pay rent in accordance with the terms of said lease for the months of June, July, and August, 1905, and that he was indebted to plaintiff for this rent; that on the 1st day of August, 1905, plaintiff served a notice in writing upon the defendant to vacate the premises and terminate the lease by reason this failure to pay the rent; that defendant refused to either pay the rent or vacate, and that thereafter, and on the 14th day of August, 1905, plaintiff served on the defendant in writing, a three days' notice to vacate the premises, but this notice was likewise ignored by the defendant, who still retained possession. Copies of the lease and notices referred to were made part of the complaint. A demurrer was filed to this complaint and overruled, whereupon defendant filed an answer, averring in the following language: "That none of the allegations contained in the said petition are true." On a trial a demurrer to plaintiff's evidence was overruled, and judgment was rendered for plaintiff as above set out. To reverse this judgment the defendant contends in this court that plaintiff in error could have no right of possession of any portion of the Osage Indian·reservation for a longer period than one year, and that only for agricultural purposes, and any improvements he might place on any portion of the reservation must be either personalty, for which this action will not lie, or, if realty, they are not subject to lease by him, nor subject to any right of possession in

him; and, second, that the preliminary notice to terminate the tenancy ·was invalid because of the fact the evidence disclosed that it was 'not served upon the defendant personally, but upon his son, and that it was not shown that the defendant could not be found, or that the son was residing on the premises.

Logically the first question to be considered is involved in the challenge to the jurisdiction of the court to entertain the action or to grant the relief prayed for herein. Section 159, art. 13, c. 67 (paragraph 5086) Wilson's Rev. & Ann. St. Okla. 1903, under the title of Forcible Entry and Detainer, empowers a justice of the peace to try questions concerning unlawful detention of land or tenements, and provides if it be found that the same are held unlawfully, to. cause the parties complaining to have restitution thereof. The evidence in the case discloses that the plaintiff was the owner of the buildings mentioned in the complaint, and that at the time of the making of the lease in question they were situated on a portion of the Osage Indian reservation, in the town of Pawhuska; that he was a licensed trader with the Indians, but was not himself a member of the Indian tribe; that he claimed a right to rent these buildings, and hence possession of the land on which they were situated, to which he subsequently acquired title; that the defendant executed the lease and paid rent on the property from April 1, 1904, until June, 1905, and that at the time of the bringing of this action rent was due for the months of June, July, and August of that year; that the land was not deeded at the time of the execution of the lease, nor at the time of the bringing of the action. It is defendant's claim that the buildings standing by consent upon the lands of the reservation were merely personal property, and that if plaintiff was entitled to the possession thereof, his action should be replevin and not forcible entry and detainer.

On March 3, 1905, Congress passed an act, found in chapter 1479, pt. 1, 33 Stat. 1061, providing for the survey, appraisal, and subdivision of the town site of Pawhuska, in which it is provided:

"That any person, church, school or other association in possession of any of said lots and having permanent improvements thereon, shall have a preference right to purchase the same at the appraised value, but in case the owner of the improvements refuses or neglects to purchase the same, then such lots shall be sold at public auction at not less than the appraised value, the purchaser at such sale to have the right to take possession of the same upon paying the occupant the appraised value of the improvements."

The foregoing federal statute was passed during the time that Polson was in possession of, occupying, and paying rent on, the buildings which he had leased from the plaintiff. It will be observed that the territorial statute provides that the action of forcible entry and detainer is the proper action, not only to recover possession of the lands, but also of tenements. This, to our minds, shows clearly that something other than merely land or lands could be recovered under this action. There is no evidence on the point as to whether Parsons was given permission to place these buildings upon these lots, and to thereby secure the preference right of purchase; but Congress recognized that lots in the town site of Pawhuska had permanent buildings and improvements thereon, and that these were there lawfully, when it provided that any person in possession of any lots with permanent improvements thereon should be given a preference right. Of course on the sale or transfer of these buildings no title would have passed to the land or ground on which they stood. A transfer would in all probability have carried with it nothing except the buildings, and a permissive right for their occupancy of the ground on which they stood. The contract in the case at bar, however, is not a contract for the sale of these buildings, and in that way making of them merely personal porperty, but it is a contract for their use and occupancy, carrying with it the right of peaceable possession on the part of the tenant, and which situation in our judgment constituted of them "tenements" as the word is used in the statute above cited. 2 Bouvier's Law Dictionary, p. 715; *Marmet Co. v. Archibald,* 37 W. Va. 778, 17 S. E.

299; *Sacket v. Wheaton,* 17 Pick. (Mass.) 103; *Canfield v. Ford,* 28 Barb. (N. Y.) 336; 8 Words & Phrases, p. 6911.

The defendant's next contention is that the notice to quit and to terminate the lease on account of the failure to pay rent was not served upon him, nor upon any one residing upon the premises, nor was it shown that he could not be found. It is the contention of plaintiff, in response to this, that even though the notice was improperly served, the subsequent attitude of defendant was such as to relieve plaintiff of giving any notice whatever; in other words he contends that the defendant by denying his title, and also the relation of landlord and tenant, under the authorities, is held to have waived the notice. A reference to the proceedings shows that plaintiff pleaded that he owned the store buildings, and was entitled to the immediate possession thereof; that he had leased them to the defendant, who entered the possession under the written lease; that he had failed to pay rent in accordance with its terms; and that he had given the notice referred to. The answer of defendant, as we have seen, was a denial of the truth of any of these allegations. The insistence of his counsel in this court is not that one or more of these essential and material elements were untrue, but that the plaintiff could not legally lease these buildings to defendant; that he did not own the ground on which they stood; that defendant was not estopped, under these conditions, to dispute the title by which plaintiff held, or his right to make the lease; that, not being the owner of the ground, replevin, and not forcible entry and detainer, was plaintiff's proper action for relief; and that the notice was improperly served. Counsel states in his brief, referring to the lease herein, that:

"Such a lease does not create the relation of landlord and tenant, because it is absolutely void, and estoppel only arises where that relation exists. * * * The failure to pay rental prescribed by a void lease does not put the defendant in wrongful possession, nor make his possession wrongful. There is not even a breach of contract, for there is no contract. Defendant was under no obligation to pay rent, and no rent could be recovered

and, not being estopped to contest the validity of plaintiff's right of possession, the defendant cannot be held to be wrongfully detaining the property."

The cross-examination of plaintiff by counsel for defendant was not directed to showing either that defendant did not enter into the lease, that he had paid rent subsequent to June 1, 1907, or that he had surrendered possession, but was directed to showing that the land was not deeded at the time the lease was executed or at the time the suit was brought, and that the plaintiff was not a member of the Osage Tribe of Indians.

Taking the foregoing pleadings and evidence in conjunction with the contention of counsel for defendant in this court together, we are unable to come to any other conclusion than that, if not in the attitude of denying the title of his landlord, he certainly flatly repudiates the relations of landlord an tenant. Where this is done by a party in a suit against him for possession of real property, he is held to have waived a right to notice as a tenant. It is manifest that if a party in possession of tenements or land is not the tenant of the owner thereof, our statute containing the provisions of paragraph 3326, providing that "if a tenant, for a period of three months or longer, neglect or refuse to pay rent when due, ten days' notice in writing to quit shall determine the lease, unless such rent be paid before the expiration of said ten days," and paragraph 3329, providing for the service of such notice on the tenant, etc., could have no possible application. A man who was not a tenant could not refuse or neglect to pay rent, nor would there be any lease to determine, and hence, not claiming to be a tenant, he could not complain if no notice whatever were given him. That such an attitude waives the notice appears to be the consensus of all the authorities on the subject. McAdams on Landlord & Tenant (3d Ed.) p. 618; Wade on the Law of Notice (2d Ed.) § 641; 24 Cyc. p. 1403, and cases cited; *Appleton v. Ames et al.,* 150 Mass. 34, 22 N. E. 69, 5 L. R. A. 206; *Chamberlin v. Donahue,* 41 Vt. 306; *Catlin v. Washburn,* 3 Vt. 25.

Let us discuss it a little farther, making specific application of the law to the facts here disclosed. The 10 days' notice to terminate the tenancy referred to in the above statute is one for the benefit of the tenant, and, like most other provisions of law made for the benefit of a party, may be waived. The defendant went into possession of this property under the lease; the plaintiff gave him the right to the occupancy of these premises under the written agreement, which was to continue for three years; the defendant occupied them and received the benefits of them, and paid the stipulated price for a little more than one year, or up until June 1, 1905. He ceased paying at this time; paid no money for June, none for July, and none on the 1st of August. Then it was that his landlord gave him the notice to terminate the tenancy, or pay his rent, in accordance with his contract. He did not pay his rent, and neither did he quit. He continued to hold plaintiff's premises. The plaintiff served upon him the statutory 3 days' notice to quit under the forcible entry and detainer statute. He did not give possession nor quit the premises on this notice, and at the time of the trial, which took place as we have seen in May, 1906, the plaintiff testified that defendant had paid no further rent, and was still in possession. When suit was brought, and his right to the continued possession of the premises challenged, and his landlord, as we have seen, pleaded the lease, the tenancy, the failure to pay rent, the notice to terminate the tenancy, and the refusal to either pay the rent or give possession, the tenant denied the truth of all these things, and awaited the issue. Judgment was rendered against him in the probate court. He retained possession of the premises, and appealed to the district court. Judgment was again rendered against him, and he appealed to the Supreme Court. The record does not apprise us of the position defendant took in the probate and district courts, but we assume that it was the same as has been taken here. At least his conduct is in entire consonance with his position here, and his contention here is in keeping with his conduct. When he ceased paying rent in accordance with his lease,

Vol. 23—50

and yet continued to hold possession of plaintiff's property, he placed himself in the attitude of asserting either there was no obligation existing between them, or that he was willing to induce another man to permit him to occupy his property under a false promise to pay rent for it for three years, and then keep it despite him, and defraud him of his stipulated compensation. His adoption of the former position relieved plaintiff of serving notice, and saves him of the stultification involved in the latter. It is not only charitable to ascribe to him the former, but it is in consonance with strict legal presumptions; for, in the absence of anything to the contrary, a party will be given the benefit of the presumption that his position in this court is the same as in the court below. This notice which was served upon him, as said by Mr. Wade in his work on the Law of Notice, *supra,* "like almost every other species of notice, required by law for the preservation of a right, or the exaction of a duty, may be waived. It, however, possesses one peculiarity in this respect not common to all other kinds of notice, and that is that the waiver may be either before the notice is given, after the time for giving it has elapsed, or subsequent to the giving of the notice, when it has been given in due time."

The case of *Catlin v. Washburn, supra,* from the Supreme Court of Vermont, was one involving a controversy between the plaintiff and defendant over the compensation due for the use of land. It appeared that plaintiff claimed that the defendant was his tenant, and accordingly gave him notice to terminate the tenancy and quit. The defendant, however, on the trial claimed that plaintiff was not the owner of the property, and that the relation of landlord and tenant did not exist between them. Plaintiff sought to prove the notice to quit, as was done in the case at bar, and the same situation was presented in the Supreme Court in that case as is presented here in this one. Discussing the question of the sufficiency of the notice and the attitude of the defendant, the court said:

"The second question raised in this case is whether the de-

fendant was entitled to notice to quit; for if she was, the notices read at the trial, and objected to by defendant, are so obviously defective, according to the decision of this court in *Hanchet v. Whitney,* 1 Vt. 311, that they should have been excluded, and the defendant on that account would have been entitled to a verdict. * * * But in this case on the trial she denied the title of the plaintiff, and also her being his tenant, and put him on the proof of both. This was equivalent to an admission that she did not claim to hold as his tenant, but claimed the premises adverse to him. And it is a clear principle that when a tenant disclaims to hold as tenant, but holds adverse to the landlord, no notice to quit is necessary. *Doe v. Williams,* Cowp. 621, Bull. N. P. 96. If the defendant on the trial had not denied her tenancy, and had admitted the title of Chittenden, requiring the plaintiff to show his derivative title from Chittenden, she would not thereby have waived her right to a notice to quit, if she was entitled to such notice. This accords with the determination in the case of *Jackson v. Bryan,* 1 Johns. 322, and with what is laid down in Archbold's Pleadings, 531. But in this case the plaintiff was compelled, not only to show his title from Chittenden, but also the title of Chittenden. It would have been manifestly improper for the defendant, after having thus contested every point with the plaintiff, denying that she was his tenant, and denying that he or Chittenden, under whom her husband went into possession, had any title when the plaintiff had succeeded in proving these points, to admit that she was his tenant, and say that she did not hold adverse to him, and claim that she was entitled to a regular notice to quit before she could be turned out of possession."

The fact that this notice is for the benefit of the tenant to enable him, if he elects, to pay up the rent and continue his tenancy if he acts within the statutory time, renders it so he may waive it, but he cannot do both. Manifestly, he ought not to be permitted, as is said in the Vermont case from which we have quoted, to deny that he was a tenant, take chances on succeeding in that, and, on its failing, to insist that he was a tenant, and hence entitled to the notice.

This case has been briefed and presented by counsel for the respective parties with unusual thoroughness, fidelity, and zeal; it has had our best consideration, and the foregoing expresses our

views, from which it will be seen the judgment of the lower court is affirmed.

Kane, C. J., and Hayes, J., concur; Turner and Williams, JJ., dissent.