ANTONIO ALBIANI & another *vs.* EVENING TRAVELER COMPANY & others.

Suffolk.    December 1, 2, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Agency,* Ratification. *Landlord and Tenant. Equity Jurisdiction,* Laches, Damages. *Evidence,* Relevancy.

Where an agent of the general lessee of a building, on whom broad powers are conferred by reason of the trust reposed in his fitness and fidelity, exceeds his authority by executing in behalf of the general lessee a lease in writing of a

shop in the building containing a covenant for renewal, it is the duty of the general lessee, if he wishes to disavow the lease and covenant, to do so as soon as he has knowledge of them, and if, instead of such disavowal, he permits the sublessee to occupy the shop and allows the agent to collect the monthly rent for it in checks made payable to the general lessee, it can be found that he ratified the act of the agent in executing the lease with the covenant for renewal.

Where a corporation publishing a newspaper, which is the general lessee of a building, has in its employ a person who is called the assistant treasurer of the company, although no such office is recognized by the by-laws, and performs the duties that would be performed by an assistant treasurer if there were one, and who among such duties orally sublets portions of the building not needed for the newspaper business and collects the rents, having also authority to draw checks in the company's name, and who afterwards becomes a director of the company, if during the performance of these duties he exceeds his authority by executing in the name of the company a lease in writing containing a covenant for renewal, under which he collects monthly rent in checks made payable to the order of the company, these facts will support a finding that the company had such knowledge as a corporation can have of the existence of the lease and the covenant.

If the general lessee of a building gives to a subtenant a lease of a shop in the building containing a covenant for renewal at the same rent as that fixed by the lease for three years beyond the term of the general lessee's own lease, and thereafter the general lessee takes a new lease of the whole building for a term of three years beyond the end of the term of his former lease at an advanced rent, this does not relieve the general lessee from the obligation of his covenant for renewal in the lease of the shop.

The lessee of a barber's shop under a sublease containing the ordinary covenants from a corporation publishing a newspaper, which is the general lessee of the whole building, commits no breach of his lease by permitting a tailor and a bootblack temporarily to occupy an unimportant part of the shop, this not being a subletting but at most a revocable license to do something subsidiary or ancillary to the main purpose for which the shop is occupied by the lessee.

In a suit in equity in which there was a decree for the plaintiff and in which the facts supported an inference that there had been no laches, it was *said*, that, as the defence of laches was not set up in the answer, it could not have been relied on as a matter of right.

Where in a suit in equity it was plain on the evidence that a certain lease had been surrendered by the lessee and that its surrender was accepted by the lessor, a contention, that this constituted in effect an entry for breach of condition because there had been breaches of the terms of the lease which might have warranted an entry for breach of condition, cannot prevail against the finding of a master to the contrary, by whose report it appeared, among other circumstances, that a large sum of money was paid to the lessee when he surrendered the lease.

Where the owner of a building accepts a surrender of a lease of the whole building from the general lessee, and there is outstanding a sublease of a shop in the building containing a covenant for renewal made by the general lessee and good against him, the owner, in accepting the surrender of the lease of the whole building, takes it subject to the covenant in the sublease of the shop, and the sublessee in a suit in equity against such owner can enforce the specific

performance of such covenant for renewal or can recover its equivalent in damages.

In a suit in equity, in determining the equivalent in money of the plaintiff's right to a renewal of a lease of a barber's shop in which he carried on a thriving and increasing business, the plaintiff's testimony may furnish some basis for determining the profits of his business, although no books of account were kept.

In a suit in equity, in determining the equivalent in money of the plaintiff's right to a renewal of a lease of a barber's shop in which he carried on a thriving and increasing business, where the plaintiff by oral testimony has furnished a basis for determining the profits of his business, although no books of account were kept, it is proper for the presiding judge to exclude evidence offered by the defendant as to the custom of keeping books by other persons in the same business, this having no tendency to contradict the plaintiff and no necessary probative force respecting any material issue, and it is proper also for the judge to exclude evidence offered by the defendant as to accommodations in other parts of the building in rooms substantially unlike the plaintiff's shop in location and in opportunity for attracting customers after a necessary interruption of business.

BILL IN EQUITY, filed in the Superior Court on December 9, 1912, by the lessees of a barber's shop in the so called Traveler Building numbered 78 on Summer Street in Boston against the Evening Traveler Company, a corporation, the Boston Herald, Incorporated, a corporation, the successor and assignee of the Evening Traveler Company, and Francis R. Bangs, trustee, praying for an injunction against all the defendants to restrain them from interfering with the plaintiffs' possession of the premises and for the specific performance by the defendant Evening Traveler Company of a covenant for a renewal of the plaintiffs' lease for a period of three years from January 1, 1912.

The defendant Francis R. Bangs, trustee, filed a plea in abatement, setting up the non-joinder as defendant of his co-trustee Robert H. Gardiner; and an interlocutory decree was made that the bill be dismissed without costs as to the defendant Bangs.

The other defendants demurred and answered. On March 3, 1913, the plaintiffs were allowed to amend their bill by adding certain allegations and making Bangs and Gardiner defendants, they, as trustees, being the owners of the building and the lessors of the Evening Traveler Company.

On March 10, 1913, an interlocutory decree was made, with the consent of the plaintiffs, ordering that the bill should be dismissed as to the defendants the Evening Traveler Company and the Boston Herald Company, Incorporated, and that the case as

against the defendants Bangs and Gardiner be referred to Robert D. Weston, Esquire, as master, and enjoining the defendants Bangs and Gardiner until further order of the court from interfering with the plaintiffs' possession of the shop occupied by them in the building 78 Summer Street in Boston.

The defendants Bangs and Gardiner filed a cross bill asking for relief against the plaintiffs. The original plaintiffs demurred to the cross bill and their demurrer was sustained. The defendants Bangs and Gardiner appealed from the order sustaining the demurrer.

The master filed a report and afterwards a supplementary report, finding, among other facts, those that are stated in the opinion. The defendants Bangs and Gardiner filed exceptions to the master's report and supplementary report and also moved to recommit the report. An interlocutory decree was made by *Jenney,* J., denying the motion to recommit, overruling all the exceptions of the defendants Bangs and Gardiner and ordering that the master's report be confirmed. Later by order of the same judge a final decree was entered ordering that the defendants Bangs and Gardiner, as trustees, pay to the plaintiffs as the money equivalent of the plaintiffs' right of possession, as found by the master under a stipulation of the parties, the sum of $4,554 with interest thereon to the date of payment together with $65.46 as costs of suit. The defendants Bangs and Gardiner appealed from the interlocutory decree denying their motion to recommit the report of the master, overruling those defendants' exceptions to the report and confirming the report, and from the final decree.

*H. Williams, Jr.,* (*T. Brennan & L. C. Bigelow* with him,) for the defendants Bangs and Gardiner.

*J. E. Hannigan,* for the plaintiffs.

RUGG, C. J. The Boston Traveler Company was the lessee of a building on Summer Street in Boston for a term of ten years ending on January 1, 1912. In August, 1910, the Evening Traveler Company took over all the property of the Boston Traveler Company, including the lease. On May 11, 1911, a new lease was given by the defendants Bangs and Gardiner, trustees, to the Evening Traveler Company for three years from January 1, 1912. On July 1, 1912, the newspaper published by the Evening Traveler Company was consolidated with the Bos-

ton Herald, and the Evening Traveler Company moved its personal effects to the Herald Building. On January 30, 1911, a sublease of a store in the leased premises to the plaintiffs for eleven months, beginning February 1, 1911, was executed in the name of the Evening Traveler Company, containing this clause, "Albiani Bros. are to have the privilege of renewing this lease for a term of three years more provided the Evening Traveler Co. renews their lease that length of time."

The first question is whether this lease bound the Evening Traveler Company. The facts as found by the master are that it was signed by one Weeks, who had no original authority to execute such a lease. The Evening Traveler Company can be bound only because of its knowledge and ratification of the acts of Weeks. He was in the employ of the Evening Traveler Company and was called the assistant treasurer of the company, although there was no such office recognized in the by-laws. He was the person who performed the duties which would have belonged to such an officer if there had been one. The subletting of portions of the building not needed for the newspaper business was attended to by Weeks, who also collected rents, although no written lease was made except to the plaintiffs. The predecessor of the plaintiffs held under a written lease, which Weeks undertook to terminate in behalf of the company. The plaintiffs at once entered into open occupancy of their store and fitted it up as a barber shop at considerable expense with the usual furnishings of such establishments and did a thriving and increasing business. They paid their rent monthly by checks to the order of the Evening Traveler Company. Weeks had authority to draw checks in that company's name. He subsequently became a director of the company. The rent of other subtenants with one exception was increased after the renewal of the company's lease, its rent also having been increased. But no attempt was made to increase the rent of the plaintiffs. The lease to the plaintiffs was found among the papers of the Evening Traveler Company at the time of its removal to the Herald Building.

These facts are sufficient to support the master's finding that the Evening Traveler Company had such knowledge as a corporation can have of the existence of the lease to the plaintiffs.

The authority of Weeks to do many acts indicating a high

degree of confidence on the part of the employer was unquestioned. Power to draw checks is an important indication of the employer's trust in an agent. The letting of the store to the plaintiffs apparently was in the interests of his employer. That act was at most an excess of authority and ratification may be presumed from slight circumstances. The duty to disaffirm at once on knowledge is imperative because the inference of authority flows easily from the trust reposed by the principal in the fitness and fidelity of the agent. *Harrod* v. *McDaniels,* 126 Mass. 413, 415. *Reid* v. *Miller,* 205 Mass. 80, 85. The finding of the master that the Evening Traveler Company ratified the act of Weeks in making and delivering to the plaintiffs the lease and agreement to renew is supported by the reported facts. *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333. *Cumberland Glass Manuf. Co.* v. *Wheaton,* 208 Mass. 425.

This is a case where the agent was acting for the apparent benefit of his principal and not conducting a fraud on his own account. There is no presumption that his personal interests would prevent him from disclosing the facts to his principal and cases like *Innerarity* v. *Merchants' National Bank,* 139 Mass. 332, relied on by the defendants, are quite inapplicable.

The renewal of the lease of the Evening Traveler Company need not be for the same rent in order to enable the plaintiffs to demand renewal of their lease. The fact that the covenantor has taken a new lease at increased rent will not relieve him from the obligation to perform his own contract. In this respect the case at bar is indistinguishable from *Cunningham* v. *Pattee,* 99 Mass. 248.

There was no breach by the plaintiffs of their lease in permitting a tailor and a bootblack temporarily to occupy a trifling part of their premises. They parted with no control. There was no subletting, but at most a revocable license to do something subsidiary or ancillary to the main purpose for which the premises were occupied by the plaintiffs as lessees. *Lowell* v. *Strahan,* 145 Mass. 1.

The result is that the plaintiffs had a binding contract for the renewal of their lease, which they could have enforced against the Evening Traveler Company by a bill for specific performance. *Leominster Gas Light Co.* v. *Hillery,* 197 Mass. 267.

The defendants contend that the plaintiffs abandoned their right to a renewal of their lease. But on this point the master found in favor of the plaintiffs, and the facts warrant the finding. Weeks notified the plaintiffs in November, 1911, that the company's lease had been renewed for three years and they thereupon said that they wanted a new paper. They demanded a formal renewal of Weeks on several occasions, who assured them that it was unnecessary, although promising to give it if insisted upon. The oral demand was enough under the circumstances to preserve their rights, provided it was made upon a proper representative of the Evening Traveler Company. When the consolidation with the Herald took place, a demand in writing upon the company was sent by registered mail. Weeks was not then in the service of the company. From these facts the inference is warranted that no one representing the company reasonably would have supposed that the plaintiffs had abandoned their claim for a renewal.

Laches has not been set up in the answer and hence cannot be relied on as matter of right. *Kershishian* v. *Johnson,* 210 Mass. 135, 139. But the facts support the inference that there have been no laches.

The lease of the Evening Traveler Company was surrendered to the lessors. This is the fair import of the written instruments by which the relation between them and the Evening Traveler Company and Higgins, assignee of the lease, are set forth. The contention of the defendants that this constituted in effect an entry for breach of condition cannot be supported. At least, in view of the master's report it cannot be regarded as a necessary consequence of what was done. The payment of the large sum of money concurrently with the release of that company from the covenants of the lease, in the light of the written agreement which in terms is a surrender, in connection with all the other circumstances forbids that inference. While there were breaches of the terms of the lease by the Evening Traveler Company, which perhaps would have warranted an entry for breach of its conditions, there is no imperative implication that that course was pursued.

The plaintiffs, therefore, had a valid lease from the tenant of the defendants, with a clause giving them a right to a renewal

upon a condition which came into existence. They seasonably demanded a renewal according to the terms of their contract, which they have never received, but they have never abandoned nor waived their right, nor have they been guilty of laches in seeking its enforcement.

The remaining inquiry is whether the plaintiffs have any remedy against the defendants. The facts upon which this right may be predicated are these: The plaintiffs on December 9, 1912, filed their original bill in which they set forth their claim of a right to a renewal of their lease against the Evening Traveler Company, the Herald Company and the defendant Bangs. The latter filed a plea in abatement on the ground that his co-trustee, Gardiner, was not joined, and on January 20 the bill was dismissed as to Bangs. He had filed an answer in which he denied that he contemplated remodelling the building or conspiring with the Evening Traveler Company to dispossess the plaintiffs. On February 8, 1913, the Evening Traveler Company lease was surrendered and two days later the defendants as lessors notified the plaintiffs that they must vacate the premises. Thereafter the lessors were made parties defendant. All these circumstances show that, when the lessors accepted the surrender of the Evening Traveler Company lease, it was subject to the rights of the plaintiffs. The defendants acquired no greater rights respecting the plaintiffs by the surrender than the Evening Traveler Company had against them. *Jones* v. *Parker*, 163 Mass. 564. *Beal* v. *Boston Car Spring Co.* 125 Mass. 157, 160. *Ferguson* v. *Jackson*, 180 Mass. 557. It was the duty of the Evening Traveler Company to renew the lease of the plaintiffs. Higgins, who was the assignee of the lease to the Evening Traveler Company, knew of the lease to the plaintiffs and stands no better than the Evening Traveler Company. The defendants gain no advantage as to the plaintiffs through surrender from Higgins above what would have come to them from dealing directly with the Evening Traveler Company. Relief may be had against them. *Felch* v. *Hooper*, 119 Mass. 52, 57. *Dooley* v. *Merrill*, 216 Mass. 500.

No error is disclosed in the master's rulings or findings respecting damages. The testimony of the plaintiffs, although found to be somewhat exaggerated, nevertheless furnished some basis for determining the profits of their business, even though no books

of account were kept. The evidence did not differ in kind from that which juries often have to consider in the assessment of damages. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220.

The evidence offered as to the custom of keeping books by others in the same business did not contradict the plaintiffs. It had no necessary probative force respecting any material issue. Evidence as to accommodations in other parts of the remodelled building, in a store substantially unlike in location and opportunity for attracting customers after a necessary interruption of business, rightly was excluded. It is not necessary to deal in detail with the other exceptions to evidence. Many of them relate to matters which in part were within the discretion of the master. In any event, no error of substantial importance appears and none of the exceptions ought to be sustained. *Pigeon's Case*, 216 Mass. 51, 55. See St. 1913, c. 716, § 1.

*Decree affirmed with costs.*