D. A. SCHULTE, INC. *vs.* BROCKTON YOUNG MEN'S CHRISTIAN ASSOCIATION.

Plymouth.   October 9, 1930. — November 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Landlord and Tenant,* Termination of relation, Sublease, Renewal. *Equity Jurisdiction,* Rescission, To relieve from results of fraud. *Fraud.*

At the hearing of a suit in equity to secure the cancellation of a certain lease in which the defendant was lessor and the plaintiff lessee, and the enforcement of the terms of a previous sublease given by former lessees of the defendant to the plaintiff, it appeared that the term of the original lease from the defendant to the plaintiff's lessors was ten years from September 1, 1914, with the right of renewal for a further

term of ten years provided such lessors of the plaintiff gave the defendant thirty days' notice of their desire to renew, the rental upon such renewal to be determined by agreement of the parties or by arbitration in accordance with terms set forth in the lease; that the sublease to the plaintiff provided for a term beyond September 1, 1924; that in May, 1924, the original lessees, the plaintiff's lessors, gave a notice in writing to the defendant of their desire to renew for a further term of ten years; that, following negotiations, during which there was a failure to agree on terms of renewal and the defendant did not know of the sublease to the plaintiff, the defendant for a consideration procured a release by the original lessees of their rights under the original lease; that thereafter, in negotiations following notice to the defendant from the plaintiff as to his sublease, a representative of the defendant showed to the plaintiff the release of the plaintiff's lessors and stated that such lessors had not exercised their option and were not in a position to do so; and that thereafter the plaintiff accepted the new lease from the defendant which in the suit he sought to rescind. The trial judge stated that he did not find that the plaintiff was induced to execute the new lease by false or fraudulent representations on the part of the representative of the defendant, and a decree was entered dismissing the bill, from which the plaintiff appealed. *Held*, that

(1) It was plain that any rights which the plaintiff had under his sublease during the term of the original lease terminated with the expiration of the original lease on September 1, 1924;

(2) The notice given by the original lessees, the plaintiff's lessors, to the defendant in May, 1924, of their desire to renew the original lease was not of itself sufficient to operate as an extension of the original lease;

(3) The release of the original lessees', the plaintiff's lessors', rights, obtained by the defendant in good faith without knowledge of the plaintiff's sublease, was an effectual defence to a suit by them against the defendant, placed him in the position of a *bona fide* purchaser from them and also afforded a defence to the plaintiff's suit against him;

(4) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on April 30, 1928, and afterwards amended, described in the opinion.

The suit was heard in the Superior Court by *Qua*, J., a stenographer having been appointed under the provisions of G. L. c. 214, § 24; Equity Rule 29 (1926). Material evidence and findings by the judge are stated in the opinion. A final decree was entered dismissing the bill with costs. The plaintiff appealed.

*J. J. Gaffney*, for the plaintiff.

*R. G. Dodge*, (*R. A. Cutter* with him,) for the defendant.

CROSBY, J.   This is a bill in equity to secure the cancellation of a certain lease in which the defendant is lessor and the plaintiff lessee, and the enforcement of the terms of a prior sublease given by former lessees of the defendant to the plaintiff as sublessee.   The sublease provided for a term extending beyond the term of the original lease which has since been surrendered.   The case was heard by a judge of the Superior Court who ordered a final decree to be entered dismissing the bill.   The plaintiff appealed.

On August 22, 1914, the defendant leased a parcel of land with the buildings thereon to Benjamin E. Waters and others for a term of ten years from September 1, 1914, with the right of renewal for a further term of ten years provided the lessees gave the lessor thirty days' notice of their desire to renew and the rental was to be determined by agreement of the parties or by arbitration in accordance with the terms set forth in the lease.   In the year 1920 the lessees assigned the lease (with the consent of the lessor) to the Mutual Realty Trust of which the original lessees were the trustees.   On December 18, 1919, the Mutual Realty Trust and the plaintiff had entered into an agreement for a sublease of a portion of the building, and later a sublease thereof was executed by Waters and others, as trustees of the Mutual Realty Trust.   Under this lease the plaintiff's term was for four years from September 1, 1920, at a rental of $14,000 per year, and for a further term of ten years from September 1, 1924, at a rental to be increased by the *pro rata* division of the increase in rent, if any, charged by the defendant to the trustees of the Mutual Realty Trust, but said increase was not to be in excess of $2,000 a year additional.   On May 31, 1924, the trustees of the Mutual Realty Trust by a letter (exhibit 10) notified the defendant that they desired to renew for a further term of ten years their lease of the building; the defendant authorized one Field to act for it in the matter and negotiations were had on several occasions.   The parties failed to agree upon the rental for the renewal term, and finally on October 14, 1924,

the trustees of the Mutual Realty Trust accepted an offer made by the defendant to pay $30,000 for a release of their rights to an additional term. On November 21, 1924, a written instrument was executed by which the trustees released and surrendered all their rights to a renewal of the lease.

The record shows that the plaintiff first learned of the surrender by the trustees of the original lease from a letter dated October 28, 1924, and signed by one Swan for Whitcomb and Company, real estate brokers, to one Nichols, vice-president of the plaintiff; that one Barnaby, vice-president of the plaintiff, at once telephoned the defendant's representative, and a conference was had on November 6, 1924, at which Barnaby, one Santee (attorney for the plaintiff), Swan and Field were present. At that meeting Field showed the agreement dated October 14, 1924, of the Mutual Realty Trust to surrender and release its rights under the original lease from the defendant to the representatives of the plaintiff there present, covering up only the portion which showed the amount of the consideration to be paid by the defendant therefor. This agreement was examined by Barnaby and Santee and the latter advised Barnaby that the rights of the plaintiff under its sublease were thereby extinguished. Thereafter Barnaby entered into negotiations with the defendant's agent for a lease from the defendant to the plaintiff of the part of the building then occupied by the plaintiff, and it was agreed that a lease should be executed at a rental of $18,000 a year for a term of ten years from December 1, 1924. On November 24, 1924, a lease to that effect was executed by the parties.

The original bill alleged, in substance, that, after the trustees of the Mutual Realty Trust had notified the defendant of their desire to renew the lease for the additional term, on many occasions when the parties were negotiating for the additional term the defendant's agent made false and fraudulent representations to the trustees with the intent and purpose of compelling them to surrender their rights in the lease, and falsely represented to

them that the plaintiff had agreed to take over the entire building at a rental that the trustees could not afford to pay; that to induce the trustees to surrender their rights in the lease, Field stated to them that he had negotiated with the plaintiff for a release of all its rights under its lease with the trustees and had secured the same; that such representations were false; that on November 6, 1924, at the conference between the parties above referred to, Field informed Barnaby and Santee that they would have to negotiate with him for a new lease, but concealed from them statements which he is alleged to have fraudulently made to the trustees to induce them to surrender their rights under the original lease. It is alleged that the execution of the new lease by the plaintiff was thus induced by the fraud of the defendant's agent.

A demurrer to the bill was sustained and thereafter an amendment was allowed by the addition of paragraphs 7A and 7B. The amendment alleges, in substance, that Field falsely and fraudulently represented to the plaintiff or to its authorized agents that the trustees "had never exercised their option of renewal and had not done anything to preserve their rights" to a renewal of the original lease; that the plaintiff, relying wholly upon the false statements of Field, entered into a new lease with the defendant for a term of ten years from the first day of December, 1924, at an increased and excessive annual rental of $18,000. To the amended bill the defendant demurred. This demurrer was overruled on the ground that the amended bill alleges that the defendant falsely represented "direct to the plaintiff (not to Waters, *et al.*)" that no notice had been given of a desire to renew the lease by the trustees to the defendant and that the plaintiff was thus fraudulently induced to enter into the new lease with the defendant.

The case was thereafter heard on the merits. The presiding judge made findings and rulings and ordered a final decree to be entered dismissing the bill with costs. In his findings and rulings he stated that "The only question remaining open for trial in the case is the question

whether or not the final lease between the plaintiff and the defendant dated November 24, 1924, . . . was procured to be executed through false and fraudulent representations by one Field, who acted as the defendant's agent in the transaction, to the effect that the original lessees . . . Waters *et al.,* 'had not done anything to preserve their rights in their original lease with the defendant and that, therefore, the lease from Waters *et al.* to the plaintiff was not in effect because of the failure on the part of the said Waters *et al.* to exercise any rights they had toward the renewal of their lease.' "

The judge found the following facts: The only representations alleged to have been made by Field were in the course of a conversation by telephone with the plaintiff's agent Barnaby, shortly before November 6, 1924, and at the conference held on the last named date, namely, " that over the telephone Field said to Barnaby that the 'Mutual Realty' (another name for Waters *et al.*) had not exercised their option to renew and so that the plaintiff's lease was broken and the plaintiff would be out on the street unless it made a new lease with him, and at the interview on November 6 Field said to Barnaby and Santee that the Mutual Realty had not exercised their option and had not renewed their lease and so the plaintiff's lease with them was broken, and that the plaintiff would have no standing and would have to get out if it did not negotiate a new lease with the Y. M. C. A." At the time these statements were made the trustees had indicated to the defendant that they desired to renew the lease. The judge further stated: " I also find that . . . [Field] acted throughout in entire good faith with no intent to deceive and believed his statements to be true. Neither Field nor the defendant knew until after October 14 " that the plaintiff had any lease or rights which extended beyond September 1, 1924, when the original lease between the defendant and the trustees came to an end. " I follow the testimony of Field on this because I am satisfied that the testimony of the plaintiff's witnesses to the contrary is in error as to the time when the

question of the Schulte lease was first taken up between the plaintiff and the defendant . . . at said interview of November 6 Field showed to Barnaby and Santee the acceptance from Waters *et al.* of the $30,000 offer, Exhibit 17, (covering up, as they fully understood, only the amount of the consideration to be paid as the basis for his, Field's statements). . . . I do not find that Barnaby and Santee relied upon Field's statements as a representation that no notice of intention to renew had ever been given. I find that they relied upon Exhibit 17, and drew their own conclusions as to its effect, and acted upon those conclusions in agreeing to make the new lease between the plaintiff and the defendant. I do not find that Field made the statements which he did make as of his own knowledge, but rather I find that he disclosed Exhibit 17 as his authority for his statements. I am not satisfied that Barnaby and Santee would have taken any different course if they had known of exhibit 10. I do not find that the plaintiff was induced to execute the final lease, Exhibit 3, by false or fraudulent representations on the part of the defendant."

The judge further found that Field did not know on or before October 14, 1924 (the date of the letter from the trustees to the defendant accepting the offer of $30,000 for a surrender of their rights under the original lease) the terms of the sublease from the trustees to the plaintiff. This finding was warranted. The judge saw the witnesses and heard their testimony. He was in a better position to judge of their credibility than can be determined by us from the printed record. The finding that there was no misrepresentation or fraud on the part of Field during the telephone conversation or the subsequent conference with Barnaby and Santee, but that the plaintiff and his representatives acted wholly in reliance upon their examination of the letter dated October 14, 1924, from the trustees to the defendant was fully warranted. All that Field told them was that the trustees had not exercised their option and that they were not in a position to do so. The judge properly found that Field's

statements were largely only general deductions or conclusions as to the effect of exhibit 17.

It is plain that any rights the plaintiff had under its sublease during the term of the original lease terminated with the expiration of the original lease on September 1, 1924. If, thereafter, the trustees continued in possession of the premises, they were merely tenants at will. *Leavitt v. Maykel,* 203 Mass. 506, 509. *Hanna v. County of Hampden,* 250 Mass. 107. *Wit v. Commercial Hotel Co.* 253 Mass. 564, 570. The notice given by the trustees to the defendant on May 31, 1924, of their desire to renew the original lease alone was not sufficient to operate as an extension of it. It is manifest from the language of the lease that the parties contemplated the giving of a new lease in order that they should be bound before the new and additional term should come into existence. *Judkins v. Charette,* 255 Mass. 76, 80, 81 and cases cited. *Shannon v. Jacobson,* 262 Mass. 463, 465. No agreement was ever made respecting the new rental by the parties, and, as the trustees have acted contrary to the determination of the terms of the rental to be paid during a renewal term, the lessees are deemed to have thereby failed to comply with and complete the performance of an important condition precedent and have no legal right to demand a new lease. *Nichols v. Rosenfeld,* 181 Mass. 525, 527. *Diebold Safe & Lock Co. v. Morse,* 226 Mass. 342, 344. See *Appleton v. Ames,* 150 Mass. 34, 42.

An examination of the evidence, which need not be recited in further detail, makes it plain that the findings of the judge were warranted. It thus appears that on October 14, 1924, the defendant, without any notice at that time of the plaintiff's sublease, obtained in good faith for the promise to pay $30,000 a valid defence to any suit by the trustees for specific performance of the covenant to give a new lease. It follows that upon the foregoing findings the judge rightly ordered a decree to be entered dismissing the bill.

The cases of *Mabardy v. McHugh,* 202 Mass. 148, *Albiani v. Evening Traveler Co.* 220 Mass. 20, and *Gardiner*

v. *Higgins,* 234 Mass. 350, relied on by the plaintiff, are distinguishable in their facts from the case at bar. Without reviewing those decisions, it is sufficient to say that in the present case the defendant was in the position of a *bona fide* purchaser for value without notice of the interests of the plaintiff as sublessee.

*Decree affirmed with costs.*