*Southern District*

*Third District Court of Bristol*

No. 7769

**JOSEPH SAULNIER, ET AL**

**v.**

**JOSEPH TEIXEIRA**
**and**
**IRVING NURENBERG, INTERVENOR**

(November 30, 1955)

*Cox, J.* This is an action of contract tried before (*Taveira, J.*) to recover from the defendant, Joseph Teixeira, $384 for use and occupation of certain garage stalls. Irving Nurenberg, claiming to be the owner of the goods and chattels which were stored in the stalls by the defendant and which had been attached by the plaintiffs, was permitted to intervene. *Check v. Kaplan*, 280 Mass. 170, 179. Thereafter, the plaintiffs filed an amended declaration against the intervenor, claiming $384 against him for use and occupation.

There was a finding for the plaintiffs against the defendant, Teixeira, in the sum of $384 and against the plaintiffs in their claim for use and occupation against the intervenor. The judge made no order or finding with reference to the goods or chattels attached by the plaintiffs and later claimed by the intervenor except to observe that the intervenor, as conditional vendor, had his remedy under G. L. c. 223, §§74, 75.

The case comes before us on two reports. The

first was requested by the defendant Teixeira who claims to be aggrieved by the refusal of the judge to grant his eight requests for rulings of law, and the other was requested by the plaintiffs who claim to be aggrieved by the refusal of the judge to grant their sole request for a ruling of law and by the judge's granting of the intervenor's requests for rulings numbers 1, 5, 7 and 9. * (The defendant's eight requests which were denied, and the intervenor's four requests which were granted, are set forth in the footnote.)

At the outset it may be observed that it does not appear to be in question that the attachment when made by the plaintiffs was good, or that the intervenor is a conditional vendor of the goods and entitled to their possession.

In the year 1947, the defendant Teixeira rented from the plaintiffs certain garage stalls at a rental of $16 monthly payable in advance. He stored painting materials and equipment in the stalls. The defendant was adjudicated a bankrupt in 1951, but, nevertheless, continued to store the materials and equipment in the stalls and to pay rent until May, 1952.

In April, 1952, Teixeira, being in default on the conditional sale, written demand for surrender of the materials and equipment was made upon him in behalf of Nurenberg, the intervenor. Repeated similar demands were made on May 16, June 30 and July 18, 1952. These demands were ignored by Teixeira until early in August, 1952, when certain keys, supposedly for the stalls, were delivered by him to the attorney for Nurenberg. The keys would not unlock the doors of the stalls and Nurenberg was unable to obtain possession of the materials and equipment. As a consequence, on August 12, 1952, a further communication was sent to Teixeira informing him that the keys did not fit, demanding access to the premises, and that arrangements be made to effectuate re-

possession of the materials and equipment, but to no avail.

On or about May 1, 1952, Teixeira informed the plaintiffs that he would no longer pay rent. Thereafter, the plaintiffs did not demand rent from Teixeira until this action was brought. It was in May, 1952, that the plaintiffs first learned that the materials and equipment in fact belonged to Nurenberg and not to Teixeira.

In our opinion, the evidence did not require, or even permit, a finding that Nurenberg became the tenant of the plaintiffs. "A tenancy at will arises out of an agreement express or implied by which one uses and occupies premises of another for a consideration usually the payment of rent." The relation between the tenant and the landlord is contractual. *Williams v. Seder,* 306 Mass. 134, 136. *Connors v. Wick,* 317 Mass. 628, 630. Nurenberg has never been given possession of the stalls wherein his goods are contained against his will. Under the circumstances, a tenancy depending on possession cannot be inferred as the plaintiffs contend, by the mere presence of Nurenberg's goods on the premises, notwithstanding some verbal fencing between Saulnier and the attorney for Nurenberg on the subject of rent. Accordingly, it was correct to deny the plaintiffs' sole request for a ruling of law, that "Where the defendant Irving Nurenberg claims title of the goods and knew where these goods were and failed to remove them, the intervenor knowing rent was owed the plaintiffs, is liable in implied contract for the fair rental of the space where these goods were." On this point, the findings of the trial judge were "that there has never been a proper delivery of the equipment from Teixeira to Nurenberg so as to effectuate a valid repossession" notwithstanding "ample and sufficient demands." He found "that Nurenberg had no lawful right to attempt to gain entrance into the premises without a proper and lawful entry, which, of course,

would require the use of proper keys . . . that the delivery of the keys by Teixeira to Nurenberg was not an actual and complete delivery of the goods because these keys were not useable and the locks could not be opened by them." The judge also found that after the keys had failed to afford Nurenberg access to the premises, Teixeira failed after further demands to effect repossession of the property. The judge concluded "that for all legal purposes and effects, that Teixeira still retains his position as conditional vendee of the leased property and that, therefore, he is liable for the use and occupancy from May 1, 1952 to the date of the writ."

We think the judge was right in his conclusions and findings and that there was no error in his treatment of the requests for rulings. His decision establishing Teixeira's liability was a just one. Teixeira had rented the stalls from the plaintiffs for the purpose of storing painting materials and equipment of which he was conditional vendee. He continued the use of the stalls for that purpose after his bankruptcy in 1951 and paid rent until he notified the plaintiffs on or about May 1, 1952 that he would no longer do so. Nevertheless, he did nothing whatever to effect the removal of the goods from the stalls nor did he assist Nurenberg, the conditional vendee, and intervenor to do so. The delivery to the attorney for Nurenberg of keys which did not fit the locks on the stalls was an idle ceremony, a useless and meaningless gesture, so far as any effect on his responsibility is concerned.

It is not necessary to determine the exact nature of Teixeira's tenancy during the period in question. As he continued on in possession after his notice of May, 1952 that he would no longer pay rent, even to the date of the writ, there is some legal basis for regarding him as a tenant at will. *D. A. Schulte, Inc. v. Brockton Young Men's Christian Association,* 273 Mass. 335, 342. *Staples v. Collins,* 321 Mass.

449, 451. If, on the other hand, on the theory that his tenancy at will was terminated following his notice of May, 1952, which we do not decide, see G. L. (Ter. Ed.) c. 186, §12; *Mescall v. Somerset Savings Bank,* 305 Mass. 575, 577, nevertheless, he continued in possession at sufferance and liable for rent. G. L. (Ter. Ed.) c. 186, §3. Teixeira has continued to occupy the stalls to the same extent at the date of the writ as at the start of his tenancy in 1947. He must pay for the stalls so long as he continues to use and occupy them. His obligation to pay rent to the plaintiffs is not lessened by the fact that Nurenberg has a superior title and right to the materials and equipment stored in the stalls, possession of which he has denied Nurenberg. His liability for rent depends on a contract for possession and not upon the ownership of the goods stored in the premises. *Williams v. Seder,* 306 Mass. 134, 136, 137. *Connors v. Wick,* 317 Mass. 628, 630.

Teixeira's bankruptcy in 1951 does not at all affect the judge's conclusions. He continued on in possession and paid rent after his bankruptcy in 1951 until May, 1952. The trustee in bankruptcy did not concern himself with Teixeira's tenancy of the stalls and indeed it is difficult to observe any value to the bankruptcy in the tenancy that might have inspired the interest and concern of the trustee. No claim for rent prior to the bankruptcy is made. As has already been pointed out, Teixeira's liability turns upon his continued possession of the stalls. Bankruptcy is not shown to have interfered with his possession.

In the light of what has been said, we see no error of law in the denial of the defendant's eight requests for rulings of law. They are inapplicable to the facts found by the judge. *Liberatore v. Framingham,* 315 Mass. 538, 544. Nor do we see any error of law prejudicial to the plaintiffs in the granting of the intervenor's requests for rulings of law numbers 1, 5, 7 and 9.

Orders should be entered dismissing the reports. *Defendant's eight requests for rulings of law which were denied*:

1. That there was a termination of the tenancy between the plaintiffs and the defendant.

2. That there was an attornment of liability under the tenancy between the plaintiffs, the defendant and the attorney for one Nurenberg.

3. That there can be no liability from and after August 17, 1951, the date of bankruptcy of the defendant, on the part of the defendant.

4. That there can be no liability for rent due prior to August 17, 1951, in this action, the same more properly being a claim to be presented and acted upon by the Bankruptcy Court.

5. That the defendant, Joseph Teixeira, was not the owner of the property located in or on the property of the plaintiffs.

6. That upon the adjudication in bankruptcy of Joseph Teixeira all interest of Joseph Teixeira, if any, in and to the property located in or on the property of the plaintiffs passed to the Trustee in Bankruptcy.

7. The plaintiffs cannot maintain this suit against the defendant, Joseph Teixeira, because of the bankruptcy of Joseph Teixeira.

8. Upon all the evidence the plaintiffs have failed to sustain the burden of proof.

*Intervenor's four requests for rulings of law which were granted*:

1. The evidence warrants a finding for the intervenor.

5. The evidence warrants a finding that the intervenor could not enter upon the plaintiffs' premises for the purpose of removing the personal property without causing a breach of the peace.

7. The evidence warrants the finding that the relationship of landlord and tenant never arose between the plaintiffs and the intervenor.

9. The intervenor was without legal right to enter the premises of the plaintiffs forcibly to replevin his, the intervenor's, property.