Banks, J.
This is an action in contract by the plaintiff-landlord to recover rent allegedly due by the defendant-tenant pursuant to a lease of commercial property. The case is before this Division upon questions of law voluntarily reported by the trial justice under G.L.c. 231, §108.
The salient facts of this controversy may be summarized as follows: The *225 plaintiff-lessor leased office space to the defendant-lessee for the four year period of December 1, 1975 through November 80, 1979. The lease contained the following provision:
The Lessee shall have the option to renew said lease for four consecutive five year terms upon fair and reasonable rent to be agreed upon between the owners of the premises and the Lessees, said option to be exercised by written instrument to the owners ninety (90) days prior to the end of each term, the rent to be agreed upon prior to thirty (301 days before expiration of each term. In the event that the owners and the Lessees can not agree upon a fair and reasonable rent, they shall appoint a commercial realtor from the City of Waltham to assess a fair and reasonable rent and if necessary they may appoint a third realtor to arrive at a fair and reasonable rent. . . . All parties to this lease agree to abide by the rent as established by the appointed realtors and an addenda to that effect will be executed by all parties and attached to the originals of this lease. (Emphasis supplied.)
On July 2, 1979, the defendant forwarded a letter to the plaintiff which stated:
I hereby exercise my option to renew the lease. . . . Renewal to be effective for five years ending November 30, 1984.
On or about September 1, 1979, the defendant vacated the premises without notice to the landlord. No rent was paid for any period after August 31, 1979.
The plaintiff-lessor executed neither a new lease, nor an extension of the first lease, in response to the defendant’s letter of July 2, 1979. There was no evidence that the parties ever agreed upon anew rent, or designated a realtor to determine such rent.
The plaintiff ultimately sold the premises on December 31, 1980.
The plaintiff initiated suit on October 11,1979 for full rent from September 1, 1979 through November 30, 1984. Judgment was entered for the plaintiff on March 20, 1980 in the sum of $12,142.88. Damages were assessed for the period up to and including December.31, 1980.
In response to the defendant’s request for a report on the denial of his motion for a new trial and to vacate judgment, the trial justice reported two questions of law to this Division. In a March 8,1983 Opinion[1], we vacated the trial court’s assessment of damages and remanded the case for further proceedings. The trial court permitted plaintiff to amend its complaint by adding a specific claim for damages accruing between October 11,1979 and December 31,1980. The court then assessed damages for this time period and again entered judgment for the plaintiff.
The defendant submitted his second Dist./Mun. Cts. R. Civ. P., Rule 59 motion for a new trial which was again denied by the court. The trial justice, however, voluntarily reported the following three questions to this Division:
1. Was the option in the lease an option to renew or an option to extend.
2: Was the Plaintiff-landlord required to execute a new lease or a formal extension of the old lease to recover any rent for the period December 1, 1979-December 31, 1980?
3. Is the Defendant-tenant estopp'ed from claiming that the *226 plaintiff-landlord was required to execute anew lease or a formal extension of the old lease, by his act of vacating the premises before December 1, 1979?
1. It is well established that under the law of this Commonwealth a distinction is made between an option to renew and a tenant’s right to extend a lease. See, e.g., Strauss v. Sheehan, 310 Mass. 646, 648 (1942); Shannon v. Jacobson, 262 Mass. 463, 465-466 (1928). Compare Gibbs Realty & Invest. Corp. v. Carvel Stores Realty Corp., 351 Mass. 684, 685 (1967) (“tenuous distinction”). Utilization of the term “renew” customarily requires the execution of “a new lease for an additional term or a formal extension of the existing lease or something equivalent thereto.” O’Brien v. Hurley, 331 Mass. 172, 174 (1954). See also Wit v. Commercial Hotel Co., 253 Mass. 564, 670 (1925); Leavitt v. Maykel, 203 Mass. 506, 509 (1909). An “option to extend,” however, implies a simple “continuation of the original lease for a further term upon compliance with the conditions for the exercise of an option.” Klickstein v. Neipris, 283 Mass. 91, 94 (1933). The distinction between renewal and extension is thus primarily confined to whether a new instrument is required to bind the parties to a second rental term. Sciripo v. McMillan, 355 Mass. 657, 659 (1969).
In construing a written lease to determine whether a renewal or extension was intended, resort must be made to the language employed by the parties. The inclusion in the renewal clause of the phrase “option to renew" or the word “renew”, as in the instant case, constitutes some evidence of the parties’ intent to renew rather than extend the lease. Manaster v. Gopin, 330 Mass. 569, 572 (1953); Hanna v. County of Hampden, 250 Mass. 107, 109-110 (1924); Ingram v. Sonitrol Sec. Systems of Worcester, Inc., 11 Mass. App. Ct. 754, 757-758 (1981). Conversely, a clause insuring that all terms and conditions of the original lease “shall remain in full force and effect” is evidence that the parties contemplated a simple, automatic extension of their original lease. Gibbs Realty & Inves. Corp. v. Carvel Stores Realty Corp., supra, at 685.
The lease at issue expressly employs the term “renew” and contains no provision for the continued operation of all terms and conditions of the original lease upon renewal. The lease in fact anticipates the designation of a different rent term in the renewal lease and sets forth a procedure for the parties’ agreement thereon. This portion of the renewal clause suggests that the plaintiff-lessor was bargaining for something more herein than the simple assurance of continued occupancy of the premises as might have been achieved by an extension clause. A new relationship between the parties seems clearly to have been contemplated as to one of the most significant lease terms; namely, the rental rate.
In Ingram v. Sonitrol Sec. Sys. of Worcester, Inc., supra at 758, the Appeals Court held that the elaborate negotiating process undertaken by the parties to establish a rent schedule, coupled with the üse of the term “renewal” in the original lease, compelled the conclusion that the parties intended a renewal upon the execution of anew lease rather than a simple extension of their first lease. The lease at issue herein similarly contemplated negotiations between the parties for a new rental term and thus the execution of a new lease.
Accordingly, the answer to question 1. as reported by the trial court is that the option in question is an option to renew.
2. The provision for a renewal of a written lease requires, by definition, the execution of a new lease or a formal extension of the old lease. O’Brien v. *227 Hurley, supra at 174 and cases cited. It was thus incumbent upon the plaintiff-lessor herein to, at the very least, present to the defendant the lease form with appropriate “addenda” as prescribed in the parties’ original agreement.
Liability for rent presupposes a binding agreement between landlord and tenant for the occupation of leased premises. The defendant-tenant’s written exercise of his option to renew herein did not, however, effect a renewal of the parties’ lease. O’Brien v. Hurley, supra, at 174-175; D.A. Schulte, Inc. v. Brockton Y.M. C.A., 273 Mass. 335, 342 (1930). Compare Shannon v. Jacobson, supra at 467. Continued occupation of the premises by a tenant in the absence of a renewal lease creates merely a tenancy at will. Leavittv. Maykel, supra at 510. To create a new agreement for an additional, renewal term and to impose liability upon the defendant for rent thereunder, the plaintiff was thus required to prepare and deliver a new lease or a formal document equivalent to such lease. Hanna v. County of Hampden, supra at 109.
The answer to the second question posed by the trial court is “yes.”
3. Upon receipt of a tenant’s seasonable exercise of his option to renew, a landlord is unequivocally required to produce and deliver a new lease for the additional term. Gow v. Buckminster Hotel, Inc., 336 Mass. 606, 608 (1958); Judkins v. Charette, 255 Mass. 77, 83 (1926). As noted above, a landlord’s failure to do so terminates the operation of any lease between the parties beyond the expiration of the first rental period.
We cannot agree with the plaintiffs contention that the defendant should be estopped from asserting the plaintiffs failure to prepare a new lease as a defense to this action. An estoppel requires .a finding that a representation has been intentionally made to induce a particular course of conduct, and that such representation results in an act or ommission detrimental to a party who properly relies on the same. Celucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974,). The defendant’s unexplained vacating of the premises on September 1,. 1979 would not appear to satisfy these requirements. Sixty days remained under the terms of the lease for. the plaintiff to designate a new rental rate and to prepare and forward the necessary renewal documents to the defendant. Had the plaintiff performed all conditions precedent tothe parties’ execution of a new lease, a bill for specific performance could have been instituted to compel the defendant to honor the exercise of his option. Linden Park Garage, Inc. v. Capital Laundry Co., 284 Mass. 454, 460 (1933); Judkins v. Charette, supra, at 83. Cf. D.A. Schulte, Inc. v. Brockton Y.M.C.A., supra at 342. The plaintiff elected instead to commence legal action less than six weeks after the defendant’s vacating of the premises.
On the basis of the foregoing, the answer to the trial court’s third question is “no.”
4. The defendant has conceded that he is indebted to the plaintiff for rent at a monthly rate of $485.00 for September, October and November, 1979. The trial court’s finding for the plaintiff under Count I is vacated. A finding for the plaintiff in the sum of $1,455.00 under Count I is to be entered.

So ordered.

HLM Really Corp. v. Morreale, 1983 Mass. App. Div. 79.