AHMED AND CESARE, INC. *v.* WATERTOWN ARSENAL ASSOCIATES (and a consolidated case[1]). No. 89-P-1376. July 27, 1990. *Landlord and Tenant*, Termination of lease, Surrender, Assignment of lease.

*Facts.* Defendant Watertown Arsenal Associates (Watertown) is the owner of the Arsenal Marketplace, a shopping mall in Watertown. On July 12, 1983, Watertown entered into a ten-year lease with All American Hero, Inc. (Hero, Inc.), of premises in the mall to be used as a submarine sandwich shop, the rent being dependent in part on business done. Hero, Inc., a Florida company, was a franchisor of such shops under the name "All American Hero." After running the Arsenal shop directly for more than two years, Hero, Inc., on January 16, 1986, for consideration, granted a franchise and sublease of the premises to the plaintiff Ahmed and Cesare, Inc. (A & C).[2] Because remittances of rent by Hero, Inc., to Watertown were slowed down after about April, 1986, it was arranged through the Watertown management agent that A & C would make payments straight to Watertown, and this practice was followed.

On January 22, 1988, Hero, Inc., wrote to its numerous franchisees that "[m]any of you have expressed a preference for having a direct lease with your shopping center, rather than the present arrangement, whereby you sublet your shop from [Hero, Inc.] . . . With the passage of time, you have now had an opportunity to establish a relationship with your own mall management and, in many cases, have been paying your rent directly to the landlord." Hero, Inc., wrote that it had decided it would be in the best interests of all to eliminate the three-ply arrangement, and to that end it was enclosing a form of assignment of lease, whereby Hero, Inc., would

---

[1]As noted below, the entitled action was in Superior Court for a declaration. It was met by a summary process action in District Court. The latter proceeding was ordered consolidated with the former.

[2]Under § 10.3 of the Watertown-Hero, Inc., lease (provisions to be further dealt with below) the franchise would be on terms similar to the lease, and franchise and sublease required the prior written consent of Watertown as landlord. No writing appears in the record, but it may be assumed in the plaintiff's favor that the franchise and sublease were practically in effect.

assign its interest in the primary lease to the franchisee. The letter stated, "Please note that, under the terms of almost all of the primary leases" — this was true of the Watertown-Hero, Inc., primary lease[3] — "assignment requires the approval of the landlord." Therefore the franchisee was to execute the form in a place reserved (Hero, Inc., had already executed it) and return the document to Hero, Inc., which would transmit it to the landlord with a request for approval, to be signified by adding its execution of the form in a place reserved. Watertown never executed the form.[4]

On February 5, 1988, Hero, Inc., filed in a Florida circuit court a petition for an assignment for the benefit of creditors. By the terms of the Watertown-Hero, Inc., lease, the continuance of this proceeding for sixty days constituted an event of default by Hero, Inc., vis-à-vis Watertown.[5]

A & C continued to make its payments direct to Watertown.[6]

On July 27, 1988, the Florida court, on motion of the assignee-for-benefit-of-creditors, made an order rejecting various primary leases of Hero, Inc., with its landlords, including the Watertown-Hero, Inc., lease. Watertown promptly, on August 3, 1988, through its management agent, wrote to Cesare Grieci of A & C at "All American Hero" in the Arsenal Mall, that the franchisee was now a tenant at will and suggested that Grieci attempt to negotiate with Watertown's leasing agent a fresh lease for the space at the mall. Such negotiations took place but without result.

On March 24, 1989, A & C commenced its action in Superior Court for a declaration of rights, claiming, in effect, that it had become the assignee

---

[3]Section 10.3 of the lease provided in part: "Notwithstanding any other provisions of this lease, the Tenant [Hero, Inc.,] covenants and agrees that it will not assign this lease . . . without . . . having first received the express written consent of the Landlord [Watertown] . . . . Notwithstanding anything to the contrary in this lease, the Landlord may in its sole discretion withhold its consent to any proposed assignment . . . ."

[4]Although not relied upon for purposes of our decision, there was no significant evidence that Watertown at the time received the form, or indeed, knew of Hero, Inc.'s, proposal to its franchisees. Cesare Grieci, an officer of A & C, was deposed in this action in August, 1989. The transcript is not in evidence. Watertown states that Grieci said he did not remit the assignment form to Hero, Inc., or seek Watertown's consent. A & C appears to impute knowledge of the proposal to Watertown because Watertown had available a copy of the form at the deposition (a year and a half after Hero, Inc.'s letter).

[5]Section 19.1 listed various events of default of the tenant including rent default and commencement and nondismissal for sixty days of a proceeding for assignment of the tenant's property for the benefit of creditors.

Section 19.2 stated that for any event of default the landlord might (in addition to other available remedies) enter upon the demised premises and expel the tenant and those claiming through or under it.

[6]In April, 1988, Watertown "licensed" the tenant, All American Hero, Inc., to make minor additions to the agreed menu at the Arsenal shop. The license is signed: "Licensee: All American Hero By: Cesare Grieci All American Hero Arsenal Mall". The exact role of Grieci here, whether as agent for Hero, Inc., or otherwise, is not clear, but the incident hardly alters the main established lines of the Watertown - Hero, Inc. - A & C relationship.

of the lease, replacing Hero, Inc. Watertown on March 30, 1989, served on A & C a thirty-day notice to quit, and on the same day commenced summary process in District Court to regain possession, which on A & C's motion was consolidated with the Superior Court action. From April 28, 1989, onward, Watertown declined to accept A & C's checks on the customary basis, stating in a letter to Grieci that "any amounts due will be for use and occupancy only and not monthly rent."

The papers submitted on both sides delineate the foregoing facts. They leave no genuine issue of fact. Watertown moved for summary judgment. A judge of the Superior Court allowed the motion with memorandum. A & C appeals from the judgment.[7]

*Discussion.* Reduced to essentials, the case is this. The position of Watertown as lessor, of Hero, Inc., as lessee, and of A & C as sublessee (franchisee), continued until the rejection of the primary lease by order of the Florida court. This rejection was a breach of the primary lease by the lessee, entitling the lessor to enter and regain the premises as against the lessee and any holding under the lessee. See *Appleton* v. *Ames*, 150 Mass. 34, 40 (1889); *Paeff* v. *Hawkins-Washington Realty Co.*, 320 Mass. 144, 146-147 (1946); note 5, *supra.* Cf. *In re Dial-A-Tire, Inc.*, 78 Bankr. 13, 16 (W.D.N.Y. 1987); *Keaty & Keaty* v. *Loyola Assocs.* (*In re Stalter & Co.*), 99 Bankr. 327, 330-331 (E.D.La. 1989). Watertown, acting on that basis, promptly informed the sublessee that it was now a tenant at will, see *D.A. Schulte, Inc.* v. *Brockton Y.M.C.A.*, 273 Mass. 335, 342 (1930); *Healthco, Inc.* v. *E & S Realty Assocs.*, 400 Mass. 700, 701-702 (1987), and Watertown's subsequent notice to quit was effective.

A & C attempts to show that it somehow got its feet into the shoes and its arms into the sleeves of Hero, Inc., so that it became the lessee under Watertown of a prime lease running to 1993. We agree with the judge below that the attempt fails.

A & C did not transform itself from sublessee to lessee when, as a matter of convenience, it began and continued over a period of time to make payments directly to Watertown. See *Carlton Chambers Co.* v. *Trask*, 261 Mass. 264, 266-267 (1927); *Ames* v. *B.C. Ames Co.*, 335 Mass. 511, 513 (1957). Contrast *Anderson* v. *Lissandri*, 19 Mass. App. Ct. 191, 193-194 (1985). The lease and sublease structure remained undisturbed, as was nicely shown by the Hero, Inc., letter and abortive form of assignment, which presuppose that structure.

A & C indicates correctly that Hero, Inc.'s, assignment for the benefit of creditors and continuance in that posture for sixty days was an event of default and that Watertown did not act upon the default. A & C appears to be suggesting that this amounted to Watertown's acceptance of a "sur-

---

[7]The effect of an order of the judge of November 9, 1989, was to allow A & C to remain in possession pending appeal. Meanwhile, on October 5, 1989, Watertown entered a lease with a new tenant who has not been able to take possession.

render" of the prime lease which might promote the franchisee to the rank of lessee under Watertown. "Surrender," which would look to definite assent by the lessor to an abrogation of the prime lease, cf. *Albiani* v. *Evening Traveler Co.*, 220 Mass. 20, 26-27 (1914); *Carlton Chambers Co.*, 261 Mass. at 266-268, is nowhere intimated here.[8] Watertown was empowered, but not obliged, to exercise its rights upon the event of default. The most that might be contended is that, having failed to avail itself of the particular default within a reasonable time, Watertown would waive its right to invoke that default, but Watertown would not be barred from acting upon a subsequent breach, here the rejection of the primary lease under the court order. See *Paeff*, 320 Mass. at 145-146.

Most artificial is what A & C tries to predicate about the uncompleted assignment of lease. The simple fact is that there could be no assignment because Watertown did not execute the form, its assent being crucial and actually an express condition of the effectiveness of the proposed assignment. See *Tage II Corp.* v. *Ducas (U.S.) Realty Corp.*, 17 Mass. App. Ct. 664, 667 (1984). As to any "estoppel," what can be pointed to is only the old story of the direct dealing of the franchisee with Watertown, whose character did not change after the proposed but unconsummated assignment of lease. In this view, it is unnecessary to press the proposition that the absence of written consent by Watertown to the proposed assignment may well have also rendered that instrument ineffective by reason of the writing requirement of G. L. c. 183, § 3 (quoted with our comment in the margin).[9]

So we return to the point or place of beginning, that, upon the rejection of the primary lease, Watertown was entitled to possession against A & C, now a tenant at will.

*Judgment affirmed.*

*Edward S. Englander* (*Susan M. Epstein* with him) for the plaintiff.
*Robert C. Mann* for the defendant.

---

[8]And see the writing requirement for "surrender" in G. L. c. 183, § 3, quoted at note 9, *infra.*

[9]"An estate or interest in land created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law."

Under *Podren* v. *Macquarrie*, 233 Mass. 127, 130 (1919), it appears that Watertown could be regarded as a putative "grantor" of the proposed assignment, and so within the negative reach of the statute.